UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

COMMODITY FUTURES TRADING
COMMISSION,

          Plaintiff,

        v.

YUKOM COMMUNICATIONS LTD.,
LINKOPIA MAURITIUS LTD.,
WIRESTECH LIMITED d/b/a BIGOPTION,
WSB INVESTMENT LIMITED d/b/a
BINARYBOOK, ZOLAREX LTD. d/b/a
BINARYONLINE, YAKOV COHEN,
YOSSI HERZOG, LEE ELBAZ, and
SHALOM PERETZ,

          Defendants.

Case No.:_____

Hon._____

**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND
OTHER EQUITABLE RELIEF**

    Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC"), an

independent federal agency, alleges as follows:

## I.    SUMMARY

    1.    Beginning on or around March 26, 2014 and continuing through the present (the

"Relevant Period"), Defendants Yukom Communications Ltd. ("Yukom"), Linkopia Mauritius

Ltd. ("Linkopia"), Wirestech Limited d/b/a BigOption ("Wirestech"), WSB Investments Ltd.

d/b/a BinaryBook ("WSB"), Zolarex Ltd. d/b/a BinaryOnline ("Zolarex"), Yakov Cohen

("Cohen"), Yossi Herzog ("Herzog"), Lee Elbaz ("Elbaz"), and Shalom Peretz ("Peretz")

(collectively, "Defendants"), acting individually, in concert with each other, and through their

officers, employees, and agents, have operated an illegal and fraudulent "binary options" trading

scheme.

2.      In carrying out the fraudulent scheme, the five entity Defendants—Yukom, Linkopia, Wirestech, WSB, and Zolarex—have functioned as a common enterprise (the "Yukom Enterprise") while engaging in the unlawful acts and practices alleged in this Complaint.

3.      Defendants, acting through various fictitious trade names—including "BinaryBook," "BigOption," and "BinaryOnline" (collectively the "Yukom Brands")—solicit individuals located throughout the United States, including in this District, and in other countries ("customers"), to enter into illegal, off-exchange transactions in binary options.  Each of the Yukom Brands is a fictitious entity ultimately under the ownership and control of Cohen and Herzog.

4.      The Yukom Enterprise defendants have offered, sold, entered into, and confirmed binary options through one or more of the Yukom Enterprise's internet trading websites, including www.bigoption.com (the "BigOption website"), www.binarybook.com (the "BinaryBook website"), and www.binaryonline.com (the "BinaryOnline website") (collectively, the "Yukom Brands websites").

5.      Defendants misrepresent the fundamental nature of the binary options trading offered to customers on the Yukom Brands' websites and in emails, telephone calls, and other communications with customers and prospective customers.  Defendants falsely state that the binary options offered by the Yukom Enterprise, which include options on currency pairs, oil, and other commodities, are actual transactions subject to objective market conditions, when in fact they are mere book entries whose outcomes can be and are manipulated by Defendants or others acting at Defendants' request.

6.      Further, Defendants falsely state that interests of the Yukom Enterprise are aligned with the interests of customers, when in fact the Yukom Enterprise is the counterparty to

2

its customers and profits from customer losses. Defendants also misrepresent the financial expertise, basis for compensation, physical location, and identity of their employees and agents who solicit and sell binary options (the "brokers"). In addition, Defendants falsely state that the binary options they offer are profitable, when in fact approximately 95% of customers lose money.

7. Defendants have engaged in various activities in an effort to conceal the true nature of the Yukom Enterprise, including setting up various foreign nominee entities to enter into agreements on behalf of the Yukom Enterprise and open off-shore bank accounts through which customer funds are transferred, concealed, and ultimately misappropriated and used by Defendants for their own purposes.

8. During the Relevant Period, Defendants have fraudulently solicited and accepted in excess of $103 million in customer funds to trade binary options in connection with the Yukom Enterprise's binary option trading scheme. The funds accepted by Defendants include at least $16,789,746 in credit card deposits from customers in the United States, most if not all of whom are not "eligible contract participants" ("ECPs") as defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012). Defendants misappropriated a significant percentage of those customer funds by utilizing various manipulative or deceptive devices, including so-called "bonuses" and "risk free" trades, to prevent customers from withdrawing funds; and by artificially manipulating the results of binary option trades to force customer losses and ultimately prevent customers from withdrawing funds.

9. By virtue of this conduct and further conduct described below, the Defendants have engaged, are engaging, or are about to engage, in acts and practices in violation of the following sections of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 (2012), and

accompanying Commission Regulations ("Regulations"), 17 C.F.R. pts. 1–190 (2018), as set forth in five counts:

      a.   Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), and Regulation 32.4, 17 C.F.R. § 32.4 (2018), which prohibit fraud in connection with commodity options transactions;

      b.   Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2018), which prohibit deceptive devices, schemes and/or artifices in connection with, among other things, swap transactions and prohibit false statements;

      c.   Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), and Regulation 32.2, 17 C.F.R. § 32.2 (2018), which prohibit offering or entering into off-exchange transactions in commodity options;

      d.   Section 2(e) of the Act, 7 U.S.C. § 2(e) (2012), which prohibits any person from entering into an off-exchange swap unless the person is an ECP; and

      e.   Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012), which prohibits any person from being a futures commission merchant ("FCM") (as defined in Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2012)) without registration as such.

10.    Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel Defendants' compliance with the Act and Regulations, and to further enjoin Defendants from engaging in certain commodity options and swaps-related activities.

11.    In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement,

rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

12.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder.

14.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) because Defendants have transacted business in the Northern District of Illinois, and the acts and practices in violation of the Act and Regulations have occurred within this District, among other places.

## III.     THE PARTIES

15.     Plaintiff **Commodity Futures Trading Commission** is the independent federal regulatory agency charged with the administration and enforcement of the Commodity Exchange Act and Regulations promulgated thereunder.

16.     Defendant **Yukom Communications Ltd**. has been incorporated in Israel since at least 2013.  During the Relevant Period, Yukom has maintained an office in Caesarea, Israel,

among other places, and utilized the websites www.yukom-com.com and yukomgroup.com. Yukom has never been registered with the Commission in any capacity.

17. Defendant **Linkopia Mauritius Ltd**. has been incorporated in Mauritius since at least 2013. During the Relevant Period, Linkopia has maintained an office in Ebene, Mauritius, and utilized the website www.linkopiamu.com. Upon information and belief, Linkopia is a subsidiary of Linkopia Holdings Ltd., a business entity incorporated in Cyprus that shares common ownership, operations, and employees with Linkopia. Linkopia has never been registered with the Commission in any capacity.

18. Defendant **Wirestech Limited** has been incorporated in the Republic of the Marshall Islands since on or around August 24, 2015. During the Relevant Period, Wirestech and others acting on its behalf or in concert with Wirestech has done business as BigOption. Wirestech has never been registered with the Commission in any capacity.

19. Defendant **WSB Investments Ltd**. was incorporated in Anguilla on or around March 27, 2014 ("WSB Anguilla"), in the United Kingdom on or around May 30, 2014 ("WSB UK"), in St. Vincent and the Grenadines on or around February 9, 2015 ("WSB St. Vincent"), and, upon information and belief, in Gibraltar sometime prior to September 10, 2016 ("WSB Gibraltar") (collectively, "WSB"). During the Relevant Period, WSB and others acting on its behalf or in concert with WSB did business as BinaryBook. WSB has never been registered with the Commission in any capacity.

20. Defendant **Zolarex Ltd**. has been incorporated in the Republic of the Marshall Islands since on or around September 10, 2015. During the Relevant Periods, Zolarex and others acting on its behalf or in concert with Zolarex has done business as BinaryOnline. Zolarex has never been registered with the Commission in any capacity.

21.     Defendant **Yakov Cohen**, a/k/a Kobi Cohen, is an Israeli citizen.  Cohen has resided in Merkaz, Israel and Mauritius during the Relevant Period.  Cohen, along with Herzog, has owned, operated, and controlled each entity comprising the Yukom Enterprise, and operated them as a common enterprise in connection with the Yukom Enterprise's websites.  At various times Cohen has used the alias "Jay C" when acting on behalf of the Yukom Enterprise.  Cohen, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, and/or participated in the acts and practices of the Yukom Enterprise, including the acts and practices set forth in this Complaint.  Cohen has never been registered with the Commission in any capacity.

22.     Defendant **Yossi Herzog** is an Israeli citizen who, upon information and belief, resides in Zichron, Israel.  During the Relevant Period, Herzog, along with Cohen, has owned, operated, and controlled each entity comprising the Yukom Enterprise, and operated them as a common enterprise in connection with the Yukom Enterprise's websites.  Herzog, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, and/or participated in the acts and practices of the Yukom Enterprise, including the acts and practices set forth in this Complaint.  Herzog has never been registered with the Commission in any capacity.

23.     Defendant **Lee Elbaz** is an Israeli citizen who is [   currently in custody in the Correctional Treatment Facility in Washington D.C. .  Elbaz was convicted of  conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and three counts of wire fraud in violation of 18 U.S.C. § 1343 on August 7, 2019 in the matter of *United States v. Elbaz*, Case No. 18-cr-00157 (D. Md.).  Prior to September 2017, Elbaz resided in Israel.  Elbaz was employed by Yukom in various capacities from at least May 2014 through June 2017, including serving as

Yukom's Chief Executive Officer ("CEO") from at least March to December 2016.  At various times Elbaz has used the alias "Lena Green" when acting on behalf of the Yukom Enterprise. Elbaz, acting alone or in concert with others, has formulated, directed, controlled, had the authority to control, and/or participated in the acts and practices of the Yukom Enterprise, including the acts and practices set forth in this Complaint.  Elbaz has never been registered with the Commission in any capacity.

24.     Defendant **Shalom Peretz** is an Israeli citizen who, upon information and belief, currently resides in Israel.  Upon information and belief, Peretz has had an ownership interest in Wirestech, WSB, and Zolarex at various times during the Relevant Period.  Further, since at least September 10, 2015, Peretz has been the director, officer, and beneficial owner of Zolarex. Since at least August 24, 2015, Peretz has been the director of Wirestech and, for at least a portion of the Relevant Period, has been the nominee owner of Wirestech.  Further, Peretz has been the director, officer, shareholder, and/or nominee owner of certain other entities that have received, held, or transferred funds on behalf of the Yukom Enterprise at various times during the Relevant Period.  Peretz has never been registered with the Commission in any capacity.

## IV.     OTHER RELEVANT ENTITIES

25.     Defendants Cohen and Herzog, or others acting at their direction and in concert with the Yukom Enterprise, have created or caused to be created, and have controlled, various related companies and/or foreign nominee entities to enter into contracts and open off-shore bank accounts on behalf of Defendants.  Those entities include **Big Markets Ltd**., incorporated under the laws of Anguilla and Gibraltar; **Big Markets MU Ltd**., a defunct entity incorporated under the laws of the United Kingdom; **Chandon Group Ltd**., incorporated under the laws of the Marshall Islands; **Decorcraft Limited**, incorporated under the laws of Gibraltar; **First Index**

**Ltd.**, an Israeli entity; **MPM Capital Investments Ltd.**, incorporated under the laws of Malta; **Numaris Communications Ltd.**, incorporated under the laws of, and maintaining an office in, Israel; **Tech SB Ltd.**, a Bulgarian entity; and **Zola Ltd.**, incorporated under the laws of the Bulgaria (collectively the "Related Entities").

26.     "**Z.C.**" is a Hungarian citizen who is approximately 50 years old and, upon information and belief, currently resides in Budapest, Hungary.  Since at least March 27, 2014, Z.C. has been identified as the director and nominee owner of WSB.  In addition, at various times during the Relevant Period Z.C. has been identified as the director, officer, and/or owner of at least some of the Related Entities.  Z.C. also has been at all times a nominee under the control of Defendants Cohen and Herzog.  Z.C. has never been registered with the Commission in any capacity.

27.     "**O.U.**" is a Ukrainian citizen who is approximately 36 years old and, upon information and belief, currently resides in the United Kingdom.  Since at least September 1, 2015, O.U. has been identified as the nominee owner and attorney-in-fact of WSB.  In addition, at various times during the Relevant Period, O.U. has been identified as the director, officer, and/or owner of at least some of the Related Entities.  O.U. has been at all times a nominee under the control of Defendants Cohen and Herzog.  O.U. has never been registered with the Commission in any capacity.

## V.     STATUTORY BACKGROUND

### A.     Prohibitions Against Off-Exchange Retail Swaps and Options Trading

28.     Section 2(e) of the Act, 7 U.S.C. § 2(e) (2012), makes it unlawful for any person who is not an eligible contract participant to enter into a swap unless the swap is entered into on

or subject to the rules of, a board of trade designated as a contract market (hereafter referred to as "registered exchange").

29.      An ECP is defined in Section 1a(18)(A)(xi) of the Act, 7 U.S.C. § 1a(18)(A)(xi) (2012), in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset or liability incurred, or reasonably likely to be owned or incurred, by the individual.

30.      Section 1a(47)(A) of the Act, 7 U.S.C. § 1a(47)(A) (2012), defines "swap" to include, among other things, any agreement, contract, or transaction that: (a) is an option of any kind; (b) provides for payment dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency; or (c) provides on an executory basis for payments based on the value or level of one or more interest or other rates, currencies, commodities, securities, instruments of indebtedness, indices, quantitative measures, or other financial or economic interests or property of any kind, without also conveying an ownership interest in any asset or liability.

31.      Section 4c(b) of the Act ,7 U.S.C. § 6c(b) (2012), makes it unlawful for any person to offer to enter into, enter into, or confirm the execution of, any transaction involving any commodity regulated under the Act which is of the character of, or is commonly known to the trade as, inter alia, an "option", "bid", "offer", "put", or "call", contrary to any rule, regulation or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe.  Thus, through Section 4c(b), Congress has given the Commission jurisdiction and plenary rulemaking authority over all commodity option transactions.

32.     Regulation 32.2, 17 C.F.R. § 32.2 (2018), makes it unlawful for any person to offer to enter into, enter into, confirm the execution of, maintain a position in, or otherwise conduct activity related to any transaction in interstate commerce that is a commodity option transaction, unless such transaction is conducted in compliance with and subject to the provisions of the Act, including any Commission rule, regulation, or order thereunder, otherwise applicable to any swap.

**B.      Prohibition Against Unregistered FCMs**

33.     Section 4d(a)(1) of the Act, 7 U.S.C. §6d(a)(1) (2012), makes it unlawful for any person to act as an FCM unless such person is registered with the Commission.

34.     Section 1a(28)(A) of the Act, 7 U.S.C. § 1a(28)(A) (2012), defines an FCM as an individual, association, partnership, or trust that is engaged in soliciting or accepting orders for swaps or commodity options, and, in connection with soliciting or accepting such orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades that result or may result therefrom.

**C.      Prohibitions Against Fraud**

35.     The Act and Regulations contains numerous anti-fraud provisions applicable to various categories of entities or transactions.

**i.      Options Fraud**

36.     Regulation 32.2, 17 C.F.R. § 32.2 (2018), states:

Subject to §§ 32.1, 32.4, and 32.5, which shall in any event apply to all commodity options transactions, it shall be unlawful for any person or group of persons to offer to enter into, enter into, confirm the execution of, maintain a position in, or otherwise conduct activity related to any transaction in interstate commerce that is a commodity option transaction, unless:

(a) Such transaction is conducted in compliance with and subject to the provisions of the Act, including any Commission rule, regulation, or order thereunder, otherwise applicable to any other swap, or

(b) Such transaction is conducted pursuant to § 32.3.

37.    Furthermore, Regulation 32.4, 17 C.F.R. § 32.4 (2018), promulgated under

Section 4c(b) of the Act, provides that:

In or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction, it shall be unlawful for any person, directly or indirectly:

(a) To cheat or defraud or attempt to cheat or defraud any other person;

(b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof; or

(c) To deceive or attempt to deceive any other person by any means whatsoever.

## ii.    Manipulation and Deceptive Devices

38.    Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), makes it unlawful for any

person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with

any swap, or a contract of sale of any commodity in interstate commerce, any manipulative or

deceptive device or contrivance, in contravention of such rules and regulations as the

Commission shall promulgate.

39.    Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2018), provides in relevant part, that it

shall be unlawful for any person, directly or indirectly:

In connection with any swap . . . to intentionally or recklessly:
(1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) Make, or attempt to make, any untrue or misleading statement of materials fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

## VI.    FACTS

**A.    Overview of Binary Options and Relevant Terms**

40.    A binary option is a type of options contract in which the payment depends entirely on the outcome of a discrete event—typically a "yes/no" proposition.  A binary options customer enters into a trade that predicts the price of an underlying asset by a pre-determined date and time, commonly referred to as the "expiration" or "expiry."  The price of the option at expiry is commonly referred to as the "strike price."  Basic binary options involve a prediction as to the direction that the underlying asset's price will take relative to the price of entry, while binary option pairs involve a prediction as to whether one asset will outperform another.

41.    Once the customer acquires a binary option, through payment of a premium to the option grantor, there is no further decision for the holder to make as to whether or not to exercise or trade the binary option, as binary options exercise automatically at expiry.  The expiration date and time are typically determined at the time the customer enters into a binary option trade.

42.    Binary options involve a variety of underlying assets, including currency pairs (e.g., EUR/USD); commodities such as oil, wheat, coffee, and gold; equity indices (e.g., the Down Jones Industrial Index); and stocks (e.g., Coke, Google, etc.).  However, unlike other types of options, a binary option does not give the holder the right to purchase or sell the underlying asset.  Instead, binary options are "cash settled."  When the binary option expires, if the customer has correctly predicted the asset's movement, the customer is "in the money" and entitled to a payout of a pre-determined amount of money.  If the customer has made an incorrect prediction, he or she is "out of the money," loses the premium paid, and gets nothing.

43.    Binary options contracts are required to be traded on a registered board of trade. There are only three designated contract markets ("DCM's") currently authorized to offer binary

options that are commodity options transactions to retail customers in the United States: Cantor Exchange LP, Chicago Mercantile Exchange, Inc., and the North American Derivatives Exchange, Inc.  All other entities offering binary options in the U.S. or to U.S. customers are doing so illegally.

**B.      Overview of the Yukom Enterprise**

44.      During the Relevant Period, Defendants, acting individually, in concert with each other, and with others under their employ, supervision, and control, have engaged in a fraudulent scheme to solicit customers throughout the United States and elsewhere for the purported purpose of trading illegal, off-exchange binary options.

45.      Defendants have perpetuated this scheme through the Yukom Enterprise which includes the binary option brands BigOption, BinaryBook, and BinaryOnline.  Although each of the binary option brands appears to be owned by a separate entity, in actuality there was little to no distinction between the ownership and operations of BigOption, BinaryBook, and BinaryOnline.  The brands have shared office spaces; shared compliance, human resources, and accounting services.  They also have common ownership and control.  Further, many of the brokers and other employees and agents of the Yukom Enterprise have performed the same work for multiple Yukom Brands.

46.      Prior to 2014, Cohen and Herzog founded Yukom.  Although various individuals have served as directors and/or owners of Yukom, Cohen and Herzog have been the primary beneficial owners of Yukom throughout the Relevant Period.  In various marketing materials Yukom describes itself as having over 500 employees world-wide, with representation in Israel, Australia, Ukraine, Turkey, and Mauritius, who provide call center solutions for binary option brands.  Upon information and belief, Yukom itself has had no more than 150 employees at any given time, as the majority of individuals Yukom identifies as its employees have been in fact

14

employees of defendants Linkopia, Wirestech, WSB, and/or Zolarex, as well as various subsidiaries and related entities, including foreign nominee companies created primarily for the purpose of opening off-shore bank accounts, all of which were ultimately under the control of Cohen and Herzog. All of Yukom's employees, bank accounts, and the Yukom website have been under the control of Cohen and Herzog throughout the Relevant Period.

47. Prior to 2014, Cohen and Herzog founded Linkopia. Although various individuals have served as directors and/or owners of Linkopia, Cohen and Herzog have been the primary beneficial owners of Linkopia throughout the Relevant Period; and all of Linkopia's employees, bank accounts, and the Linkopia website have been under the control of Cohen and Herzog throughout the Relevant Period.

48. Yukom and Linkopia have employed brokers to solicit individuals in the U.S. and elsewhere to trade binary options with the Yukom Enterprise through the BigOption, BinaryBook, and BinaryOnline brands. Cohen, Herzog, and Elbaz have interviewed and hired at least certain brokers, as well as other individuals employed by or acting on behalf of the Yukom Enterprise. When communicating with customers, brokers have referred to themselves as an "Account Manager," "Expert Trader," "Senior Broker," or similar title suggesting they are an analyst or trader. In fact, the substantial majority of brokers do not have any background in finance, business, or financial markets and are mere sales representatives.

49. Typically, the brokers offering and selling binary options on behalf of the Yukom Enterprise go through a two-week training program at the beginning of their employment. In at least certain instances, Elbaz has supervised the training program, which includes instruction on high-pressure sales techniques.

15

50.     At least prior to December 2016, Elbaz was responsible for supervising the individual brokers who solicit customers to trade binary options with the Yukom Enterprise. Among other things, Elbaz set monthly revenue targets for individual brokers and brands, approved bonuses, organized and directed sales competitions, and approved the alias names used by Defendants' agents and employees.

51.     Linkopia has provided "conversion" services for the Yukom Enterprise, meaning it converts leads into customers by convincing individuals to make an initial deposit of money, typically around $250, into the Yukom Enterprise's fraudulent binary options scheme.

52.     Once a customer makes the initial deposit, thus becoming a "first time depositor" or "FTD," the customer is referred to Yukom, which provides "retention" services for the Yukom Enterprise. Among other things, retention involves soliciting the customer to make additional deposits into the Yukom Enterprise's fraudulent binary options scheme.

53.     In or around 2014, Cohen and Herzog founded WSB, a nominee company used to enter agreements and open bank accounts on behalf of the BinaryBook brand, and to operate and administer the BinaryBook website. In or around 2014 Cohen and Herzog founded Wirestech, a nominee company used to enter agreements and open bank accounts on behalf of the BigOption brand and to operate and administer the BigOption website. Cohen and Herzog founded Zolarex, a nominee company used to enter agreements and open bank accounts for the BinaryOnline brand, and to operate and administer the BinaryOnline website.

54.     In addition to WSB, Wirestech, and Zolarex, Cohen and Herzog founded and have used the Related Entities to open accounts with various foreign banks and payment processors that the Yukom Enterprise has used to receive and transfer funds from U.S. customers (the "off-shore bank accounts"). Initially, Z.C. and O.U. served as the nominee directors and

16

owners of certain Related Entities. Upon information and belief, after Cohen and Herzog decided to have a member of the Yukom Enterprise replace Z.C. and O.U., Peretz assumed responsibility for some, if not all, of the off-shore bank accounts.

55. The off-shore bank accounts are located in the Czech Republic, Dubai, Israel, Lithuania, Malaysia, and Taiwan, among other places, and have been used by Defendants to conceal the true ownership of the Yukom Brands and prevent customers who learned of the Yukom Enterprise's fraudulent scheme from successfully recovering funds.

**C.    Overview of the Yukom Enterprise's Fraudulent Binary Options Scheme**

56. Beginning on or around March 26, 2014, Defendants began offering trading in binary options to retail customers, including customers in the United States, through the Yukom Enterprise.

57. The binary options Defendants market, offer, and sell are not offered on an authorized DCM or other regulated exchange. Further most, if not all, of the customers who enter into binary option transactions with the Yukom Enterprise are not ECPs.

58. When offered on a DCM or other regulated exchange, customers on opposite sides of each binary option transactions are typically matched, meaning that for each investor who correctly predicts an asset's price movement and is in the money, there is an investor who made an incorrect prediction and is out of the money. The binary option exchange earns a commission on the trade, but otherwise has no interest in its outcome.

59. The binary options Defendants market, offer, and sell operate much differently from those on regulated exchanges. Defendants do not connect their customers to legitimate binary options exchanges or otherwise match buyers and sellers of binary options. Instead, Defendants are counterparties to each transaction, acting in a manner similar to that of a casino

17

or sports book, take the opposite position on each trade, meaning that Defendants' profits increase with each customer loss.

60.     When one of Defendants' customers correctly predicts the price movement of the option and is in the money, the customer is entitled to a fixed return, typically around 70% of the amount wagered, and the Yukom Enterprise receives the remainder, typically around 30% of the amount wagered. Alternatively, when a customer incorrectly predicts the price movement and is out of the money, the customer receives nothing and the Yukom Enterprise receives 100% of the amount wagered. As a result, Defendants make significantly more money when their customers lose money.

61.     The binary options offered and sold by Defendants are not actual transactions, but rather book entries that give the appearance of actual transactions. Defendants' binary options do not result in the transfer of money from one segregated, customer account to another account at expiry. No funds actually change hands at the conclusion of any given binary option transaction with the Yukom Enterprise.

62.     Defendants have used at least one Internet-based "trading engine" platform provider (the "Platform") to perpetuate their fraudulent binary option scheme. Defendants' customers access the Platform through the Yukom Enterprise websites, typically by logging in with their email address and password.

63.     Cohen and Herzog, or others acting on their behalf and on behalf of the Yukom Enterprise, registered the BigOption, BinaryBook, and BinaryOnline websites' respective domain names, as well as the Linkopia and Yukom domain names. Cohen and Herzog jointly control the Yukom Enterprise websites, and various individuals acting on behalf of the Yukom Enterprise have provided content for those websites.

64.     Beginning on or around March 26, 2014, Defendants entered into a series of agreements with the Platform to use the trading platform's software to trade binary options with their customers (the "Platform Agreements").  Pursuant to the Platform Agreements, the Yukom Enterprise obtained a limited license to market and promote binary options and to use the Platform to offer binary options through the Yukom Enterprise websites in exchange for payment of a fixed percentage of the "net revenue," defined in at least certain Platform Agreements in relevant part as "Deposits less Withdrawals."

65.     At least certain Platform Agreements define "Deposits" as "the total amount of funds deposited by the Customers to their accounts with the Trading Platform from the beginning of activity" and define "Withdrawals" as "the total amount of funds withdrawn by the Customers from their accounts with the trading Platform from the beginning of activity, including Chargebacks and fraudulent transactions."  Chargebacks are forced transaction reversals initiated by the credit card holder's bank that result in a return of funds to the customer.  Typically, chargebacks occur when a customer files a substantiated fraudulent transaction report within 45 days of transferring funds to the Yukom Enterprise.

66.     On or around March 26, 2014, WSB entered into an agreement with the Platform for an unidentified brand or brands to use the trading platform.  Herzog signed and approved that agreement on behalf of the Yukom Enterprise.  Thereafter, the Yukom Enterprise entered into at least seven additional or amended agreements with the Platform, including an amended agreement dated September 10, 2016 for trading through the BigOption and BinaryBook websites signed by Peretz.

67.     The Platform Agreements obligate the Yukom Enterprise–to "acquire the necessary server / hosting infrastructure," meaning that the Yukom Enterprise was responsible

19

for maintaining transaction and client data for each of the Yukom Brands. The agreements further require the Yukom Enterprise to "be responsible for obtaining and maintaining all licenses and approvals for the conduct of trading by way of the Trading Platform" and state that it is "solely responsible for pre-defining" the "trading risk parameters and risk policy," following consultation with the Platform and for "monitoring at all times . . . trading position, exposure and risk level."

**D.    Defendants' Fraudulent Misrepresentations and Omissions**

68.    Throughout the Relevant Period, Defendants have held out the Yukom Brands as offering transparent, legitimate binary option transactions subject to actual market conditions, along with other financial products. For example, Defendants claim on the BigOption website that BigOption is a "top-notch binary option trading platform" that had been "[l]aunched by a conglomeration of online financial service experts." Similarly, Defendants assert that BinaryOnline "is a brokerage firm providing trading services" through a trading platform. In fact, the binary options transactions offered and sold by Defendants are mere book entries on the Platform, and the results of the binary options transactions may be manipulated by the Defendants or others acting on behalf of the Yukom Enterprise in order to increase customer losses.

69.    Not only do Defendants misrepresent the fundamental nature of the binary options offered and sold by the Yukom Enterprise—falsely stating that they are transparent, legitimate transactions subject to actual market conditions—but Defendants also fail to disclose that the Yukom Enterprise is on the opposite side of each binary option trade, meaning that the Yukom Enterprise wins when customers lose.

70.    Defendants falsely represent that their financial interests are aligned with each individual customer's financial interest. In telephone calls and other solicitations, Defendants'

20

employees and agents tell customers and prospective customers that "as your account manager my goal for you is to be as profitable as possible since my pay check is based on your profits." In fact, brokers earn money based on net customer deposits—i.e., the amount of funds deposited by customers minus any withdrawals or chargebacks. Typically, a broker earns a commission of between five and eight percent of a customer's net deposits, meaning that customer withdrawals and credit card chargebacks are deducted from customer deposits in order to determine the basis of a broker's commission.

71. Defendants also falsely represent to customers and prospective customers that their binary options transactions are profitable. For example, at least certain brokers represent that their clients make between 15%-20% a month trading binary options, when in fact the substantial majority of customers lose money.

72. Defendants fail to disclosure material information about types of trades, including the "bonuses" and "risk free trades" discussed in paragraphs 80 to 83, below.

73. Defendants falsely represent that customer funds are segregated and "kept safeguarded separately" and "properly identified." In fact, funds received from customers are comingled with Defendants' own funds, transferred through off-shore bank accounts and held in the name of Yukom, Linkopia, Wirestech, WSB, and Zolarex, as well as the Related Entities, all of which are under the control of and acting in concert with the Yukom Enterprise.

74. Defendants also misrepresent the location of the Yukom Enterprise's offices, as well as the educational background, financial expertise, and experience of individual brokers. Typically, the brokers who solicit customers to trade binary options with the Yukom Enterprise falsely state that they have experience with financial markets and prior employment in the financial industry, when in fact the substantial majority of brokers have no such experience.

21

Nevertheless, brokers use the titles "expert trader" or "economic analyst" in their solicitations to customers and prospective customers.

75.     All brokers, and certain other employees and agents, use alias or stage names when interacting with customers and prospective customers, including those located in the U.S. For example, Elbaz frequently used the alias name "Lena Green" and the email addresses "lena.green@bigoption.com" and "lena.green@binarybook.com."  At least prior to December 2016, Elbaz approved and authorized the specific aliases used by employees and agents of the Yukom Enterprise.

**E.     Defendants' Use of Manipulative and Deceptive Devices to Defraud Customers**

76.     Defendants use and employ various manipulative and deceptive devices to perpetuate their binary options scheme, prevent customers from withdrawing funds, and ultimately misappropriate customer funds.  Most notably, Defendants manipulate the Platform's risk settings to limit or prevent customers from being in the money, and offer so-called "bonuses" and "risk free trades" that are in fact deceptive devices designed to prevent customers from withdrawing funds.

77.     At least prior to November 2017, the Yukom Enterprise would alter their customers' ability to correctly predict the outcome of binary option transactions through the use of customized "risk settings" that altered the customer's ability to profit from binary option transactions, and resulted in customers experiencing an increased percentage of losing trades.

78.     Defendants did not disclose the true nature of the risk settings to customers, or otherwise inform customers that the Yukom Enterprise could alter the outcome of the customers' trades, and ultimately prevent customers from entering into winning trades.

79.     At least prior to December 2016, Elbaz approved requests from individual brokers to change the risk settings for BinaryBook customers and, upon information and belief,

BigOption customers.  Throughout the Relevant Period, Elbaz, along with others acting on behalf of and under the authorization of Cohen or Herzog, either changed the risk setting or requested that the Platform change certain risk settings.  The Yukom Enterprise would use a low risk setting – meaning that customers would win more trades than they lost – to incentivize customers to deposit additional funds and a high risk setting to force customers to lose all of their remaining funds.

80.     The Yukom Enterprise has also used manipulative and deceptive "bonuses" to perpetuate their fraudulent scheme.  A bonus is an amount of purported funds that the Yukom Enterprise claims it is contributing to a customer's trading account.  The term "bonus" is misleading as it suggests that it provides a benefit to customers, when in fact Defendants use bonuses as a tool to entice customers to deposit additional funds and to prevent customers from withdrawing funds.  Further, the bonuses offered by Defendants do not involve the transfer of any funds to a customer or customer's account, but rather are mere book entries in the Platform's software system.

81.     When offered by the Yukom Enterprise, a bonus requires a customer "turnover" their account by trading a multiplier of the bonus, or the total value of their account including existing funds and the bonus, before they are permitted to withdraw any funds, including funds from "winning" trades made before the customer received the so-called bonus.  Typically, the turnover requirement for customers trading binary options with the Yukom Enterprise is 30 times the amount of the bonus.

82.     Because only a small percentage of customers are able to reach the turnover requirement, a bonus essentially guarantees that customers will not be able to withdraw funds from their binary option trading account.  Often, even if a customer meets the turnover

requirement, the Yukom Enterprise will nevertheless continue to refuse to grant the customer's request to withdrawal funds.

83.     In addition, brokers acting on behalf of the Yukom Enterprise offer at least certain customers insured or risk free trades.  For example, Defendants identify customers that they think are "gamblers" and offer those customers a 60 second trading strategy with risk free trades. Under this aspect of the scheme, when a customer enters into and then loses a risk free trade, the customer's losses are "reimbursed" in the form of a bonus.  Typically, Defendants do not disclose the turnover requirement attached to the bonus to customers before the customers enter into risk free trades.

84.     Yukom also operates an "Academy" that purports to teach customers how to trade binary options.  In fact, the Academy is another tool used by the Defendants to retain clients and avoid withdrawals.  Brokers are directed to refer customers who request withdrawals to the Academy, where the customers' efforts to withdraw funds are stymied by individual brokers who falsely claim to have specialized knowledge of the underlying assets for certain binary option transactions and purport to offer expert trading advice to keep customers trading.

85.     Further, the Yukom Enterprise offers an "assisted trading program" to customers to help customers learn how to trade binary options.  Defendants fail to disclose that the assisted trading program allows individual brokers to place trades in customer accounts without the customer's authorization and that, ultimately, the substantial majority of unauthorized trades are not profitable.

F.     **The Yukom Enterprise's Use of High Pressure Sales Techniques**

86.     Throughout the Relevant Period, Defendants have routinely and consistently used high pressure sales techniques and offered their employees and agents awards, including cash, alcohol, and cars, for successfully soliciting customers to deposit funds with the Yukom

Enterprise. Significantly, the awards are all based on customer deposits, and not on the customers' trading activity.

87. Throughout the Relevant Period, Defendants have routinely held sales competitions. At least prior to December 2016, Elbaz approved and organized those competitions. Often, the sales competitions have involved brokers for one of the Yukom Brands, for example BigOption, and the brokers for another one of the Yukom Brands, for example, BinaryBook.

88. On or around September 29, 2015, Elbaz instructed brokers soliciting through the BinaryBook brand to "sell" the customer and "take" their money:

> We are the money makers and no one can stop us! I want to hear the noise on the floor! This is not a cemetery here! It is a boiler room! . . . Either you sell the client or he sells you a reason he can't deposit! . . . Don't leave the money! Just Take It!

**G. Defendants Have Accepted at Least $103 Million in Connection with the Yukom Enterprise's Fraudulent Binary Options Scheme.**

89. During the Relevant Period, the Defendants have accepted at least $103,636,488 million in funds in connection with the fraudulent binary option trading scheme. In an effort to conceal the true ownership of the Yukom Enterprise and prevent customers who realized they had been defrauded from recovering funds, Defendants, often acting through one of the Related Entities, have used over 100 off-shore bank accounts to funnel deposits from U.S. customers, all of which ultimately came to be controlled by Cohen, Herzog, and Peretz, or others acting on behalf of and in concert with the Yukom Enterprise.

90. When soliciting customers to trade binary options, the individual brokers often instruct customers to transfer funds to the Yukom Enterprise via wire transfer to one of the off-shore bank accounts in the name of one of the Related Entities. Defendants utilize these off-

shore bank accounts in order to conceal the purpose of the fund transfer (i.e., binary options) and to limit customer's ability to recover funds through credit card chargebacks.

91.     At least prior to December 2016, Elbaz routinely told the individual brokers which off-shore bank account to use, and engaged in other actions to supervise and control the transfer of funds from customers to the Yukom Enterprise.  For at least part of the Relevant Period, Defendants paid the individual brokers higher commissions on funds deposited via wire transfer, as compared to funds deposited via credit card.

92.     The commissions received by brokers are based on the amount of customer deposits.  Customer withdrawals and chargebacks are deducted from deposits when calculating commissions.  This incentivizes the Yukom Enterprise's employees and agents to do all that they can to prevent withdrawals.

93.     Between June 1, 2014 and December 31, 2016, Defendants accepted at least $98,943,516 from customers, including customers in the United States, who entered into binary option transactions with the Yukom Enterprise through the BinaryBook website.  Those same customers received only $19,584,208 in withdrawals, including funds returned to customers through credit card chargebacks.  The remaining $79,359,308 was ultimately misappropriated by Defendants.

94.     During the Relevant Period, the Yukom Enterprise has accepted at least $16,789,746 in funds from U.S. customers transferred via MasterCard or Visa.  Specifically, between April 2014 and June 2017, the Yukom Enterprise accepted at least $13,193,141 in funds transferred via MasterCard from U.S. customers trading binary options through the Yukom Brands, and between January 2016 and May 2018, the Yukom Enterprise accepted at least

$3,596,605 in funds transferred via Visa from U.S. customers trading binary options through the Yukom Brands.

95.     Upon information and belief, approximately 40% of the funds contributed by U.S. customers were made by credit card, while the majority of funds accepted by the Yukom Enterprise were made via wire transfer from the individual customer's bank account to one of the off-shore bank accounts in the name of one of the foreign nominee entities operated and controlled by Cohen and Herzog.

**H.      The Yukom Enterprise's Ongoing Activity**

96.     Upon information and belief, in or before December 2016, the Yukom Enterprise ceased soliciting U.S. customers to trade binary options with the BigOption brand. However, even after that time, pre-existing customers were still able to login on to their BigOption account through the BigOption website.

97.     Upon information and belief, sometime after December 2016, the Yukom Enterprise ceased soliciting U.S. customers to trade binary options with the BinaryBook brand. However, even after that time pre-existing customers were still able to login on to their BinaryBook account through the BinaryBook website.

98.     Upon information and belief, the Yukom Enterprise continues to solicit customers, including customers in the United States, through the BinaryOnline website.

99.     At least as recently as September 24, 2018, the BinaryBook and BinaryOnline websites remained active and accessible to U.S. customers.

100.     Further, upon information and belief, Cohen and Herzog, along with other members of the Yukom Enterprise, are now soliciting customers, including customers in the United States, to enter into transactions involving forex, crypto-currencies, contracts for

difference ("CFDs"), and other financial products under the Commission's jurisdiction and are likely engaging in similar fraudulent conduct in connection with that activity.

## VII.     VIOLATIONS OF THE COMMOEDITY EXCHANGE ACT

### COUNT ONE

**Violations of Section 4c(b) of the Act , 7 U.S.C. § 6c(b) (2012), and Regulation 32.4, 17 C.F.R. § 32.4 (2018)**

**Commodity Option Fraud**

101.    The allegations set forth in the paragraphs above are realleged and incorporated herein by reference.

102.    During the Relevant Period, Defendants, by the conduct alleged in the foregoing paragraphs, in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction, directly and indirectly: (a) cheated or defrauded, and attempted or cheat and defraud, customers and prospective customers; (b) made or caused to be made to customers and prospective customers false reports or statements; and (c) deceived or attempted to deceive customers and prospective customers in connection with commodity option transactions in violation of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4. Defendants did so by engaging in the conduct alleged in the foregoing paragraphs, including by:

    a.   Misrepresenting the risk, cost, and profit potential of binary option transactions offered to customers;

    b.   Misrepresenting that the financial interests of the Yukom Enterprise are aligned with the customers' financial interest, when in fact the Yukom Enterprise takes the opposite side of each trade and profits from customer losses;

    c.   Misrepresenting the Yukom Enterprise's financial experience and expertise, as well as the identity and physical location of the entities and individuals that comprise the Yukom Enterprise;

    d.   Misrepresenting that the binary option transactions offered to customers are real transactions subject to actual market conditions;

e.  Misrepresenting the purpose of "bonuses" and "risk free trades" and failing to disclose the turnover requirement;

f.  Manipulating the risk settings to limit or preclude a customer's ability to enter into profitable binary option trades; and

g.  Misappropriating customer funds provided to trade binary options.

103.  Each member of the Yukom Enterprise participated in the unlawful acts and practices described in this Complaint and are therefore jointly and severally liable for the violations of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4 committed by other members of the Yukom Enterprise.

104.  Defendants Cohen, Elbaz, Herzog, and Peretz are controlling persons of the Yukom Enterprise and have failed to act in good faith, or have knowingly induced, directly or indirectly, the acts of the Yukom Enterprise constituting the violations set forth in Count One. Accordingly, Cohen, Elbaz, and Herzog are liable for each and every violation of the Act committed by the Yukom Enterprise pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

105.  The foregoing acts, misrepresentations and omissions of Cohen, Elbaz, Herzog, and Peretz, as well as any other official, agent, or other person acting on behalf of the Yukom Enterprise, including without limitation Z.C. and O.U., occurred within the scope of their employment, office, or agency with Yukom, Linkopia, Wirestech, WSB, or Zolarex.  Therefore, Yukom, Linkopia, Wirestech, WSB, and Zolarex are liable for their acts pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

106.  Each act of: (a) cheating or defrauding, and attempting to cheat and defraud, customers and prospective customers; (b) making or causing to be made to customers and prospective customers false reports or statements; and (c) deceiving or attempting to deceive customers and prospective customers, is alleged as a separate and distinct violation of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.4.

29

## <u>COUNT TWO</u>

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012) and
Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2018)**

**Swap Fraud**

107.    The allegations set forth in the paragraphs above are realleged and incorporated herein by reference.

108.    The binary option transactions offered by the Yukom Enterprise are swaps, as defined by the Act.

109.    During the Relevant Period, Defendants intentionally or recklessly used or employed, or attempted to use or employ, manipulative or deceptive devices or contrivances in connection with contracts of sale of swaps in violation of 7 U.S.C. § 9(1) and 17 C.F.R. §180.1(a)(1)-(3).  Defendants did so by engaging in the conduct alleged in the foregoing paragraphs, including by:

   a.   Misrepresenting the risk, cost, and profit potential of binary option transactions offered to customers;

   b.   Misrepresenting that the financial interests of the Yukom Enterprise are aligned with the customers' financial interest, when in fact the Yukom Enterprise takes the opposite side of each trade and profits from customer losses;

   c.   Misrepresenting the Yukom Enterprise's financial experience and expertise, as well as the identity and physical location of the entities and individuals that comprise the Yukom Enterprise;

   d.   Misrepresenting that the binary option transactions offered to customers are real transactions subject to actual market conditions;

   e.   Misrepresenting the purpose of "bonuses" and "risk free trades" and failing to disclose the turnover requirement;

   f.   Manipulating the risk settings to limit or preclude a customer's ability to enter into profitable binary option trades; and

   g.   Misappropriating customer funds provided to trade binary options.

110.    Defendants have used instrumentalities of interstate commerce, including emails, websites and telephonic conversations, to engage in the conduct alleged in the foregoing paragraphs.

111.    During the Relevant Period, Defendants, by the conduct alleged in the foregoing paragraphs, intentionally or recklessly, using the instrumentalities of interstate commerce, directly and indirectly, in connection with swaps: (a) used or employed, or attempted to use or employ, manipulative devices, schemes, and artifices to defraud; (b) made, or attempted to make, untrue or misleading statements of material facts; (c) omitted to state material facts necessary in order to make statements made not untrue or misleading; and (d) engaged, or attempted to engage, in acts, practices, and courses of business, which operated or would operate as a fraud or deceit upon customers or prospective customers, in violation of violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).

112.    Each member of the Yukom Enterprise participated in the unlawful acts and practices described in this Complaint and are therefore jointly and severally liable for the violations of 7 U.S.C. § 9(1) and 17 C.F.R. §180.1(a)(1)-(3) committed by other members of the Yukom Enterprise.

113.    Defendants Cohen, Elbaz, Herzog, and Peretz are controlling persons of the Yukom Enterprise and have failed to act in good faith, or have knowingly induced, directly or indirectly, the acts of the Yukom Enterprise constituting the violations set forth in Count Two. Accordingly, Cohen, Elbaz, and Herzog are liable for each and every violation of the Act committed by the Yukom Enterprise pursuant to 7 U.S.C. § 13c(b).

114.    The foregoing acts, misrepresentations and omissions of Cohen, Elbaz, Herzog, and Peretz, as well as any other official, agent, or other person acting on behalf of the Yukom

Enterprise including without limitation Z.C. and O.U, occurred within the scope of their employment, office, or agency with Yukom, Linkopia, Wirestech, WSB, or Zolarex. Therefore, Yukom, Linkopia, Wirestech, WSB, and Zolarex are liable for their acts pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

115. Each act of: (a) using or employing, or attempting to use or employ, manipulative devices, schemes, and artifices to defraud; (b) making, or attempting to make, untrue or misleading statements of material facts; (c) omitting to state material facts necessary in order to make statements made not untrue or misleading; and (d) engaging or attempting to engage, in acts, practices, and courses of business, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. §180.1(a)(1)-(3).

## COUNT THREE

### Violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), and Regulation 32.2, 17 C.F.R. § 32.2 (2018)

### Illegal Off-Exchange Commodity Options

116. The allegations set forth in the paragraphs above are re-alleged and incorporated herein by reference.

117. During the Relevant Period, Defendants have offered to enter into, entered into, confirmed the execution of, maintained positions in, and otherwise conducted activities relating to commodity options using the instrumentalities of interstate commerce.

118. The commodity options that the Defendants have offered to enter into, entered into, confirmed the execution of, maintained positions in, and otherwise conducted activities relating to, were not executed on any registered exchange nor have Defendants sought registration as an exempt foreign exchange.

119.    The Defendants, by the conduct alleged in the foregoing paragraphs, and by offering to enter into, entering into, confirming the execution of, maintaining a position in, or otherwise conducting activity related to commodity options, other than on a registered exchange, have violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2012), and Regulation 32.2, 17 C.F.R. § 32.2 (2018).

120.    Each member of the Yukom Enterprise participated in the unlawful acts and practices described in this Complaint and are therefore jointly and severally liable for the violations of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.2 committed by other members of the Yukom Enterprise.

121.    Defendants Cohen, Elbaz, Herzog, and Peretz are controlling persons of the Yukom Enterprise and have failed to act in good faith, or have knowingly induced, directly or indirectly, the acts of the Yukom Enterprise constituting the violations set forth in Count Three. Accordingly, Cohen, Elbaz, and Herzog are liable for each and every violation of the Act committed by the Yukom Enterprise pursuant to 7 U.S.C. § 13c(b).

122.    The foregoing acts, misrepresentations and omissions of Cohen, Elbaz, Herzog, and Peretz, as well as any other official, agent, or other person acting on behalf of the Yukom Enterprise, including without limitation Z.C. and O.U, occurred within the scope of their employment, office, or agency with Yukom, Linkopia, Wirestech, WSB, or Zolarex. Therefore, Yukom, Linkopia, Wirestech, WSB, and Zolarex are liable for their acts pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

123.    Each act of offering to enter into, entering into, confirming the execution of, maintaining a position in, or otherwise conducting activity related to commodity options, other

than on a registered exchange, is alleged as a separate and distinct violation of 7 U.S.C. § 6c(b) and 17 C.F.R. § 32.2.

## COUNT FOUR

**Violations of Section 2(e) of the Act, 7 U.S.C. § 2(e) (2012)**

**Illegal Off-Exchange Retail Swaps**

124.    The allegations set forth in the paragraphs above are re-alleged and incorporated herein by reference.

125.    The binary options offered by Defendants are swaps transactions.

126.    Defendants have entered into swap transactions with customers who are non-ECPs.

127.    The Defendants are themselves non-ECPs

128.    Further, the swaps transactions that Defendants have entered into were not executed on a DCM or any registered exchange.

129.    Defendants, by entering into swap transactions with retail customers, have violated 7 U.S.C. § 2(e).

130.    Each member of the Yukom Enterprise participated in the unlawful acts and practices described in this Complaint and are therefore jointly and severally liable for the violations of 7 U.S.C. § 2(e) committed by other members of the Yukom Enterprise.

131.    Defendants Cohen, Elbaz, Herzog, and Peretz are controlling persons of the Yukom Enterprise and have failed to act in good faith, or have knowingly induced, directly or indirectly, the acts of the Yukom Enterprise constituting the violations set forth in Count Four. Accordingly, Cohen, Elbaz, and Herzog are liable for each and every violation of the Act committed by the Yukom Enterprise pursuant to 7 U.S.C. § 13c(b).

132.     The foregoing acts, misrepresentations and omissions of Cohen, Elbaz, Herzog, and Peretz, as well as any other official, agent, or other person acting on behalf of the Yukom Enterprise including without limitation Z.C. and O.U, occurred within the scope of their employment, office, or agency with Yukom, Linkopia, Wirestech, WSB, or Zolarex.  Therefore, Yukom, Linkopia, Wirestech, WSB, and Zolarex are liable for their acts pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

133.     Each act of entering into an illegal, off-exchange retail swap is alleged as a separate and distinct violation of 7 U.S.C. § 2(e).

## COUNT FIVE

### Violations of Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012)

### Acting as Unregistered FCMs

134.     The allegations set forth in in the paragraphs above are realleged and incorporated herein by reference.

135.     During the Relevant Period, Yukom, Linkopia, Wirestech, WSB, and Zolarex have accepted money to margin, guarantee, or secure trades or contracts resulting from commodity options or swaps transactions using the instrumentalities of interstate commerce.

136.     Yukom, Linkopia, Wirestech, WSB, and Zolarex have never been registered with the Commission as an FCM.

137.     Yukom, Linkopia, Wirestech, WSB, and Zolarex by the conduct alleged in the foregoing paragraphs, by soliciting or accepting orders for commodity options or swaps, and by accepting money to margin, guarantee, or secure trades or contracts resulting from those commodity options or swaps without registration as an FCM, have violated 7 U.S.C. § 6d(1).

138.    Defendants Cohen, Elbaz, Herzog, and Peretz are controlling persons of the Yukom Enterprise and have failed to act in good faith, or have knowingly induced, directly or indirectly, the acts of Yukom, Linkopia, Wirestech, WSB, and Zolarex constituting the violations set forth in Count Five.  Accordingly, Cohen, Elbaz, and Herzog are liable for each and every violation of the Act committed by Yukom, Linkopia, Wirestech, WSB, and Zolarex pursuant to 7 U.S.C. § 13c(b).

139.    Each act of soliciting and accepting orders and funds from U.S. customers, including U.S. customers who are not ECPs, is alleged as a separate and distinct violation of 7 U.S.C. § 6d(1) .

## VIII.   <u>RELIEF REQUESTED</u>

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers:

A.    Find that Yukom, Linkopia, Wirestech, WSB, Zolarex, Cohen, Herzog, Elbaz and Peretz violated Sections 2(e), 4c(b), 4d(a)(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 2(e), 6c(b), 6d(a)(1), and 9(1) (2012), and Regulations 32.2, 32.4, and 180.1(a)(1)-(3), 17 C.F.R. §§ 32.2, 32.4, 180.1(a)(1)-(3) (2018);

B.    Enter an order of permanent injunction enjoining Yukom, Linkopia, Wirestech, WSB, Zolarex, Cohen, Herzog, Elbaz and Peretz and all of their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 2(e), 6c(b), 6d(a)(1), and 9(1) and 17 C.F.R. §§ 32.2, 32.4, 180.1(a)(1)-(3);

C.     Enter an order of permanent injunction restraining and enjoining Yukom Communications Ltd., Linkopia Mauritius Ltd., Wirestech Limited d/b/a BigOption, WSB Investments Ltd. d/b/a BinaryBook, Zolarex Ltd. d/b/a BinaryOnline, Yakov Cohen, Yossi Herzog, Lee Elbaz, and Shalom Peretz, and all of their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

1) Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

2) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018)), for accounts held in the name of any Defendants or for accounts in which any Defendants have a direct or indirect interest;

3) Having any commodity interests traded on any of their behalf;

4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and

7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

D.     Enter an order directing Yukom Communications Ltd., Linkopia Mauritius Ltd., Wirestech Limited d/b/a BigOption, WSB Investments Ltd. d/b/a BinaryBook, Zolarex Ltd. d/b/a BinaryOnline, Yakov Cohen, Yossi Herzog, Lee Elbaz, and Shalom Peretz, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which

constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

E.     Enter an order requiring Yukom Communications Ltd., Linkopia Mauritius Ltd., Wirestech Limited d/b/a BigOption, WSB Investments Ltd. d/b/a BinaryBook, Zolarex Ltd. d/b/a BinaryOnline, Yakov Cohen, Yossi Herzog, Lee Elbaz, and Shalom Peretz, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F.     Enter an order directing Yukom Communications Ltd., Linkopia Mauritius Ltd., Wirestech Limited d/b/a BigOption, WSB Investments Ltd. d/b/a BinaryBook, Zolarex Ltd. d/b/a BinaryOnline, Yakov Cohen, Yossi Herzog, Lee Elbaz, and Shalom Peretz, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order all contracts and agreements, whether implied or express, entered into between, with or among Yukom Communications Ltd., Linkopia Mauritius Ltd., Wirestech Limited d/b/a BigOption, WSB Investments Ltd. d/b/a BinaryBook, Zolarex Ltd. d/b/a BinaryOnline, Yakov Cohen, Yossi Herzog, Lee Elbaz, and Shalom Peretz and any of the customers whose funds were received by Yukom Communications Ltd., Linkopia Mauritius Ltd., Wirestech Limited d/b/a BigOption, WSB Investments Ltd. d/b/a BinaryBook, Zolarex Ltd. d/b/a BinaryOnline, Yakov Cohen, Yossi Herzog, Lee Elbaz, and Shalom Peretz as a result of the acts and practices that constituted violations of the Act and Regulations as described herein;

G.     Enter an order directing Yukom Communications Ltd., Linkopia Mauritius Ltd., Wirestech Limited d/b/a BigOption, WSB Investments Ltd. d/b/a BinaryBook, Zolarex Ltd. d/b/a BinaryOnline, Yakov Cohen, Yossi Herzog, Lee Elbaz, and Shalom Peretz to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by

Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599–600, see Regulation 143.8, 17 C.F.R. § 143.8 (2018), for each violation of the Act and Regulations, as described herein;

      H.     Enter an order requiring Yukom Communications Ltd., Linkopia Mauritius Ltd., Wirestech Limited d/b/a BigOption, WSB Investments Ltd. d/b/a BinaryBook, Zolarex Ltd. d/b/a BinaryOnline, Yakov Cohen, Yossi Herzog, Lee Elbaz, and Shalom Peretz to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2) (2012); and

      I.     Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Dated: August 12, 2019

<div style="margin-left:50%">

Respectfully submitted,

/s/ Elizabeth N. Pendleton

Elizabeth N. Pendleton
Elizabeth M. Streit
Scott R. Williamson

Attorneys for Plaintiff
Commodity Futures Trading Commission
525 W. Monroe St.
Chicago, IL 60661
Tel. (312) 596-0700
Fac. (312) 596-0714
*ependleton@cftc.gov*
*estreit@cftc.gov*
*swilliamson@cftc.gov*

</div>