IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 19-cv-05416 ) |
| YUKOM COMMUNICATIONS LTD., et al., | ) Judge Andrea R. Wood ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The Commodity Futures Trading Commission ("CFTC") has brought this suit against Defendants for allegedly engaging in a fraudulent options trading scheme in violation of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1, *et seq.*, and regulations promulgated thereunder ("CEA Regulations"), 17 C.F.R. § 1, *et seq.* The CFTC claims that the following Defendants targeted customers in and outside the United States through this scheme: Yukom Communications Ltd. ("Yukom"), Linkopia Mauritius Ltd. ("Linkopia"), Wirestech Limited d/b/a BigOption ("Wirestech"), WSB Investments Ltd. d/b/a BinaryBook ("WSB"), Zolarex Ltd. d/b/a BinaryOnline ("Zolarex"), Yakov Cohen, Yossi Herzog, Lee Elbaz, and Shalom Peretz. Defendants Yukom, Linkopia, Wirestech, WSB, Zolarex, Herzog, Elbaz, and Peretz have all failed to appear in this case, and so the Court has entered default against them pursuant to Federal Rule of Civil Procedure 55(a). (*See* Dkt. Nos. 46, 56.) Only Cohen has appeared to defend the CFTC's action. He now seeks dismissal of all claims against him pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). (Dkt. No. 47.) For the reasons stated below, Cohen's motion is denied.

BACKGROUND

For purposes of deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all inferences in the plaintiff's favor. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 612 (7th Cir. 2019). In this case, the CFTC alleges as follows.

Sometime prior to 2014, Cohen and Herzog, who are both Israeli citizens, founded Yukom, which was incorporated and based in Israel, and Linkopia, which was incorporated and based in Mauritius. (Compl. ¶¶ 16, 21–22, 46, Dkt. No. 1.) In 2014, Cohen and Herzog founded WSB, Wirestech, and Zolarex, all incorporated outside the United States and serving as nominee companies for Yukom's options brands BigOption, BinaryBook, and BinaryOnline. (*Id.* ¶¶ 45, 53.) Together, Yukom, Linkopia, Wirestech, WSB, and Zolarex allegedly comprised a common enterprise ("Yukom Enterprise") that engaged in fraudulent and off-exchange "binary options" trading. (*Id.* ¶ 2.) According to the CFTC, Cohen and Herzog control all of the Yukom Enterprise's employees, bank accounts, and websites. (*Id.* ¶ 46.) Cohen, in particular, is alleged to have personally interviewed and hired certain brokers and other individuals to work for the Yukom Enterprise. (*Id.* ¶ 48.) He is also generally alleged to be one of the "controlling persons of the Yukom Enterprise" who directed it to engage in the unlawful acts set forth in the complaint. (*Id.* ¶ 104.)

An "option" is a type of contract offering the buyer the opportunity to buy or sell an asset at some point in the future at a stated price. *See* 7 U.S.C. § 1a(36). The CEA defines a "swap" as a type of options contract that is based on the value of a certain product, such as an interest rate, currency, or commodity, at a predetermined date and time. *See id.* § 1a(47)(A). In this case, the CFTC alleges that the "binary options" contracts offered by Defendants are swaps within the meaning of the CEA. (Compl. ¶ 108.) "Binary options" are options for which payment depends on

2

the outcome of a discrete event. (*Id.* ¶ 40.) Typically, a binary options customer either gets paid or not depending on the outcome of a "yes/no" proposition. (*Id.*) Any binary options contracts offered in the United States must be traded on one of three registered boards of trade: the Cantor Exchange LP, the Chicago Mercantile Exchange, or the North American Derivatives Exchange, Inc. (*Id.* ¶ 43.) Only eligible contract participants[1] may enter into "off-exchange" swaps— meaning swaps outside of one of the three boards of trade (also called "designated contracts markets"). *See* 7 U.S.C. § 2(e). The CEA also prohibits anyone from soliciting or accepting orders for swaps or options contracts if they are not registered with the CFTC as a futures commission merchant. *See id.* §§ 1a(28)(A), 6d(a)(1).

On March 26, 2014, Defendants started offering binary options contracts to retail customers, including customers in the United States, through the Yukom Enterprise. (Compl. ¶ 56.) The binary options Defendants sell are not offered on a board of trade or other regulated exchange. (*Id.* ¶ 57.) Furthermore, most of the Yukom Enterprise's customers are not eligible contract participants. (*Id.*) Defendants do not operate like other regulated options traders because, instead of connecting their customers to legitimate binary options exchanges (*i.e.*, matching buyers and sellers), Defendants take the opposite position of their customers on each trade. (*Id.* ¶ 59.) Thus, while Defendants represent that their financial interests are aligned with those of their customers, they actually profit when their customers lose money. (*Id.* ¶¶ 59–60, 69–70.)

The CFTC alleges that Defendants make a number of fraudulent statements to solicit and maintain customers, including misrepresenting basic facts about the Yukom Enterprise. For instance, Defendants claim on the BigOption website that they offer a "top-notch binary option

---

[1] Section 1a(18) of the CEA offers a more detailed definition of "eligible contract participants." *See* 7 U.S.C. § 1a(18). For purposes of this Memorandum Opinion, however, it suffices to say that eligible contract participants are generally entities, such as banks or corporations, that meet a certain minimum value of total assets. *Id.* An individual who has at least $10,000,000 invested on a discretionary basis may also qualify as an eligible contract participant. *Id.*

trading platform" run by "a conglomeration of online financial service experts." (*Id.* ¶ 68.) In fact, Defendants manipulate the results of the binary options transactions to increase their customers' losses and a substantial majority of their employees have no prior experience in the financial industry. (*Id.* ¶¶ 68, 74.) Furthermore, according to the CFTC, "[i]n various marketing materials Yukom describes itself as having over 500 employees world-wide," when in fact Yukom has never had more than 150 employees at any given time. (*Id.* ¶ 46.) Most of the employees that Yukom claims work for it actually work for the other related entities also controlled by Cohen and Herzog, such as Linkopia and Wirestech. (*Id.*) Brokers also tell potential customers that clients earn a profit of between 15%–20% per month on Defendants' platforms, when most customers end up losing money. (*Id.* ¶ 71.) Defendants further report to clients that their funds are properly segregated. (*Id.* ¶ 73.) In fact, Defendants comingle their own funds with their clients' assets, transferring those funds into off-shore bank accounts controlled by various Yukom Enterprise entities. (*Id.*)

The complaint asserts five Counts against all Defendants for violations of the CEA and CEA Regulations:

- Count One alleges that Defendants have engaged in commodity option fraud in violation of 7 U.S.C. §§ 6c(b), 13c(b) and 17 C.F.R. § 32.4. (Compl. ¶¶ 101–06.)

- Count Two alleges that Defendants have engaged in swap fraud in violation of 7 U.S.C. §§ 6(c)(1), 9(1), 13c(b) and 17 C.F.R. § 180.1(a)(1)–(3). (Compl. ¶¶ 107–15.)

- Count Three alleges that Defendants have entered into the trade of illegal, off-exchange commodity options in violation of 7 U.S.C. §§ 6c(b), 13c(b) and 17 C.F.R. § 32.2. (Compl. ¶¶ 116–23.)

- Count Four alleges that Defendants have engaged in illegal, off-exchange retail swaps in violation of 7 U.S.C. §§ 2(e), 13c(b). (Compl. ¶¶ 124–33.)

- Count Five alleges that Defendants have accepted orders for commodity options contracts and swaps without being registered with the CFTC and from customers

4

who are not eligible contract participants, in violation of 7 U.S.C. §§ 6d(a)(1), 13c(b). (Compl. ¶¶ 134–39.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the Court need not accept a party's legal conclusions, and a party cannot defeat a motion to dismiss with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* This pleading standard does not require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

### I. Pleading Standard

Cohen argues that all claims against him should be dismissed because the CFTC has failed to plead facts with particularity and thus has not met the heightened pleading standard of Rule 9(b). As an initial matter, the parties disagree as to whether Rule 9(b), which applies to fraud claims, applies to all five Counts raised in the complaint.

Federal notice pleading generally requires only a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a). In other words, "[u]nder Rule 8, a plaintiff only needs to give enough details about the subject[]matter of the case to present a story that holds together." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted). But when a plaintiff alleges fraud, the heightened standard of Rule 9(b) goes further to require the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That means that for claims alleging

5

fraud, the complaint must "describe the 'who, what, when, where, and how' of the fraud—the first paragraph of any newspaper story." *Presser*, 836 F.3d at 776. (internal quotation marks omitted). In this case, the parties agree (and the Court concurs) that Rule 9(b) applies to Counts One and Two, which are claims for commodity option fraud and swap fraud. Cohen contends that Rule 9(b) also applies to Counts Three, Four, and Five, while the CFTC asserts that only the more lenient Rule 8 standard applies to those claims.

Generally, Rule 9(b) applies to any claim that "sounds in fraud—in other words, one that is premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks omitted). In determining whether Rule 9(b) applies to a claim, courts therefore must look to the underlying factual allegations, not to the claims themselves. *Id.* (noting in support of the application of Rule 9(b) that "appellants' opening brief is riddled with references to fraud"); *see also Fed. Deposit Ins. Corp. v. Patel*, No. 19-cv-6917, 2020 WL 6681348, at *3 (N.D. Ill. Nov. 12, 2020) ("[W]hen determining whether Rule 9(b) applies, courts do not look to the claims made or counts listed but instead look to the underlying allegations."). "In addition, when an alleged claim includes allegations of both fraudulent and non-fraudulent conduct, Rule 9(b)'s heightened pleading standard applies only to allegations of fraud, and not to the complaint as a whole." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1039–40 (N.D. Ill. 2007) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003); *Sys. Am., Inc. v. Providential Bancorp, Ltd.*, No. 05 C 2161, 2006 WL 463314, at *4 (N.D. Ill. Feb. 24, 2006)).

The Court therefore looks to the factual allegations offered in support of Counts Three, Four, and Five to determine whether those claims are based on a course of fraudulent conduct and thus subject to Rule 9(b)'s heightened pleading standard. The term "fraud" generally encompasses

misrepresentations, misleading omissions, and all other means a person may use "to gain advantage over another by false suggestions or by the suppression of truth." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (internal quotation marks omitted). Again, Counts Three and Four allege that Defendants have illegally offered and entered into off-exchange commodity options contracts and swaps transactions. Count Five alleges that Defendants have illegally solicited and accepted orders for options contracts and swaps even though they are not registered with the CFTC as futures commission merchants. Because none of those claims arise out of fraud, the Court concludes that Rule 9(b)'s heightened standard does not apply to Counts Three, Four, and Five.

Cohen contends that because the complaint contains numerous paragraphs alleging fraud, which are re-alleged and incorporated by reference under Counts Three, Four, and Five, those Counts must be premised on fraud, as well. That is simply incorrect. That the CFTC has employed standard, boilerplate language incorporating all of its factual allegations into each of its Counts is of no significance. The pertinent facts supporting Counts Three, Four, and Five, have nothing to do with fraud. Instead, all three Counts are premised on Defendants having engaged in options trading with U.S. customers outside of approved exchanges without first registering with the CFTC. *See, e.g.*, 7 U.S.C. § 2(e) ("It shall be unlawful for any person, other than an eligible contract participant, to enter into a swap unless the swap is entered into on, or subject to the rules of, a board of trade designated as a contract market . . . ."). The CFTC need not offer proof of any misrepresentation or false statement to establish Defendants' liability under the provisions of the CEA relevant to those Counts. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) ("Rule 9(b)'s heightened pleading standard does not apply to an allegation of unfair conduct, because fraud is not a required element under that branch of the statute."). To the

contrary, the alleged conduct would violate the provisions at issue in those Counts even if Defendants have been completely truthful with their customers.

Thus, while the Court agrees that Rule 9(b) applies to the claims of fraud raised in Counts One and Two, it will evaluate the sufficiency of Counts Three, Four, and Five under the more relaxed Rule 8 pleading standard.

## II.     Fraud Claims (Counts One and Two)

Cohen argues that the CFTC's allegations of fraud fail to meet the heightened Rule 9(b) standard because they do not plead any facts against him with particularity. Instead, Cohen contends that the complaint impermissibly lumps him with all other Defendants and pleads many allegations based on "information and belief."

As noted above, Rule 9(b) generally requires a fraud claim to describe the "who, what, when, where, and how" of the fraud. *Presser*, 836 F.3d at 776. That means the plaintiff must typically include "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (internal quotation marks omitted). But the Seventh Circuit has also explained that "courts and litigants often erroneously take an overly rigid view of the formulation." *Pirelli Armstrong Tire*, 631 F.3d at 442. The information that plaintiffs must provide to state a valid fraud claim "may vary on the facts of a given case." *Id.* If a plaintiff cannot "plead the specific date, place, or time of the fraudulent acts, they still must use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* (internal quotation marks omitted). Rule 9(b)'s particularity requirement must also be relaxed where the plaintiff lacks access to critical facts. *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). Allegations of fraud

8

based on "information and belief" are sufficient when "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 841 (7th Cir. 2018) (internal quotation marks omitted).

As Cohen emphasizes, Rule 9(b) typically also requires the plaintiff to provide fair notice to multiple defendants by "inform[ing] each defendant of the nature of his alleged participation in the fraud." *Rocha*, 826 F.3d at 911 (internal quotation marks omitted); *see also Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) ("[A] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." (internal quotation marks and alteration omitted)). However, under 7 U.S.C. § 13c(b), "where individual defendants are charged as 'controlling persons' the allegations of fraud may be made against the controlling persons collectively." *CFTC v. Standard Forex, Inc.*, No. CV-93-0088 (CPS), 1993 WL 809966, at *16 (E.D.N.Y. Aug. 9, 1993). And in this case, the CFTC claims that Cohen is liable for the alleged fraud as a person who controls the Yukom Enterprise. *See* 7 U.S.C. § 13c(b) ("Any person who, directly or indirectly, controls any person who has violated [the CEA or its regulations] may be held liable for such violation in any action brought by the [CFTC] to the same extent as such controlled person.").

To state a claim against someone under § 13c(b) successfully, the plaintiff must plead facts sufficient to allege the underlying violation and that the "[d]efendant, as a controlling person, did not act in good faith *or* knowingly induced, directly or indirectly, the conduct which constitutes [the] violation." *CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1334 (11th Cir. 2002). And when fraud is alleged against controlling persons, "Rule 9(b) requires not merely that the defendants exercised control in general, but control with respect to the specific actions

9

constituting the fraud." *CFTC v. Monex Credit Co.*, No. SACV 17-1868 JVS (DFMx), 2020 WL 1625808, at * 6 (C.D. Cal. Feb. 12, 2020). The Court must therefore determine whether the complaint adequately alleges fraud and, if so, whether it adequately alleges that Cohen exercised control with respect to the fraud.

Here, the complaint alleges the following specific facts in support of the CFTC's claims of fraud:

- During the relevant period (i.e., beginning on March 26, 2014 and continuing through the present (*see* Compl. ¶ 1)), Defendants have held out Yukom as offering legitimate binary options transactions by, for instance, claiming on the BigOption website that the brand is a "top-notch binary option trading platform" run "by a conglomeration of online financial service experts," when Defendants actually manipulate the transactions to increase their customers' losses. (*Id.* ¶ 68.)

- Defendants falsely tell customers in telephone calls and other solicitations that their financial interests are aligned with their customers'. (*Id.* ¶ 70.) Brokers actually earn a 5%–8% commission on their customers' net deposits, i.e., the amount of funds deposited by customers minus any withdraws or chargebacks. (*Id.*)

- "[B]rokers represent that their clients make between 15%–20% a month trading binary options, when in fact the substantial majority of customers lose money." (*Id.* ¶ 71.) Between June 1, 2014 and December 31, 2016, Defendants accepted $98,943,516 from customers and those customers received only $19,584,208 back in withdrawals. (*Id.* ¶ 93.)

- Defendants falsely represent that customer funds are properly segregated when Defendants actually comingle customer funds with their own in off-shore bank accounts. (*Id.* ¶ 73.)

- Defendants misrepresent the location of the Yukom Enterprise offices. (*Id.* ¶ 74.)

- Brokers falsely tell customers that they are "expert traders" with prior employment in the financial industry, when most of them do not have any relevant experience. (*Id.*)

- "In various marketing materials," Yukom claims to have more than 500 employees world-wide, when it has never had more than 150 employees at any given time. (*Id.* ¶ 46.)

- Defendants' brokers use alias names and alias email addresses to interact with customers. (*Id.* ¶ 75.)

10

The complaint also describes various strategies that Defendants allegedly use to defraud and manipulate customers. (*Id.* ¶¶ 76–88.)

On the surface, these allegations appear to be missing much of the "who, what, when, where, and how" typically expected under Rule 9(b). They lack certain details, such as the specific dates and times of the fraudulent acts, who made fraudulent statements and to whom, and (except for the allegation of misrepresentations on the BigOption website) the methods of communications used to do so. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("[L]oose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do."). But the complaint makes up for these deficiencies by pleading with specificity the misrepresentations that Defendants make to customers and the ways in which those statements are false. The purpose of Rule 9(b) is to "force[] the plaintiff to conduct a careful pretrial investigation and minimize[] the risk of extortion that may come from a baseless fraud claim." *Pirelli Armstrong Tire*, 631 F.3d at 441 (internal quotation marks omitted). It is clear from the complaint that the CFTC conducted a thorough pre-filing investigation into the Yukom Enterprise.[2] It has identified specific fraudulent statements; provided details about how Defendants have benefited from the fraud financially; and described how Defendants manipulate their customers to make money. Again, the information required under Rule 9(b) varies based on the facts of the case. *Id.* at 442. Here, the CFTC alleges that Defendants have perpetrated a massive, years-long fraudulent scheme. Therefore, it is appropriate that the complaint offers a detailed overview of Defendants' entire operation rather than describing with specificity certain instances of fraud committed over the years. Keeping in mind Rule 9(b)'s "twin demands of detail

---

[2] While Cohen claims that a number of the complaint's allegations are based only on "information and belief," the most pertinent allegations do not include that qualifier.

11

and flexibility," *id.*, the Court finds that the complaint's allegations raise a plausible inference of fraud and provide Defendants with fair notice of the grounds for the CFTC's claims.

The Court must also consider whether the complaint successfully states a claim against Cohen as a controlling person by alleging that he exercised control over "the specific actions constituting the fraud." *Monex Credit*, 2020 WL 1625808, at *6. The CFTC alleges that Cohen (along with Herzog) controls and provides content for the Yukom Enterprise's websites and that those websites contain false statements about the business. (Compl. ¶¶ 46–47, 68.) The complaint also alleges that Cohen is responsible for hiring and controlling the enterprise's brokers, who Defendants hold out to customers as having more financial experience than they actually do. (*Id.* ¶¶ 46–48, 68, 74.) The Court finds these allegations sufficient to tie Cohen to the fraud for purposes of 7 U.S.C. § 13c(b).

To conclude, Counts One and Two state valid fraud claims against Cohen as a controlling person of the Yukom Enterprise. The motion to dismiss is therefore denied with respect to Counts One and Two.

### III. Non-Fraud Claims (Counts Three, Four, and Five)

Counts Three, Four, and Five allege that Defendants have violated various provisions of the CEA by engaging in off-exchange trades and swaps with customers who are not eligible contract participants and by operating as unregistered futures commission merchants. For these claims, Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Generally, "as a matter of normal pleading standards," "[l]iability is personal." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). But again, to state a claim against a defendant as a controlling person under 7 U.S.C. § 13c(b), the complaint only needs to include enough facts to allege that "the defendant did not act in good faith ***or***

knowingly induced, directly or indirectly, the conduct which constitutes a violation of the [CEA]." *R.J. Fitzgerald*, 310 F.3d at 1334.

The complaint alleges, among other things, that Cohen has co-owned, co-operated, and controlled each entity comprising the Yukom Enterprise (*see* Compl. ¶ 21); that Cohen has never been registered with the CFTC (*see id.*); that none of the entities making up the Yukom Enterprise have ever been registered with the CFTC (*id.* ¶ 136); and that the entities making up the Yukom Enterprise have engaged in off-exchange commodity options trades and swaps with U.S.-based customers who are not eligible contract participants (*id.* ¶¶ 119, 126–28). The complaint also alleges that Cohen hires and controls the brokers who actually enter into contracts with customers. (*Id.* ¶¶ 46–47.) The Court concludes that these allegations, taken together, allow for the reasonable inference that Cohen is liable for violating the CEA's prohibitions against off-exchange, unregistered trading. The complaint also gives Cohen fair notice of his alleged involvement in the wrongdoing by pleading that he owns and operates all the entities that make up the Yukom Enterprise and controls their employees. Accordingly, Cohen's motion to dismiss is denied with respect to Counts Three, Four, and Five.

## CONCLUSION

For the reasons stated above, Cohen's motion to dismiss (Dkt. No. 47) is denied. Cohen must file an answer to the CFTC's complaint within fourteen days.

ENTERED:

Dated: September 30, 2021

_____
Andrea R. Wood
United States District Judge

13