UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

COMMODITY FUTURES TRADING
COMMISSION,

          Plaintiff,                  Case No. 1:19-cv-05416

          v.                       Hon. Jeremy C. Daniel

YUKOM COMMUNICATIONS LTD.,
LINKOPIA MAURITIUS LTD.,
WIRESTECH LIMITED d/b/a BIGOPTION,
WSB INVESTMENT LIMITED d/b/a
BINARYBOOK, ZOLAREX LTD. d/b/a
BINARYONLINE, YAKOV COHEN,
YOSSI HERZOG, LEE ELBAZ, and
SHALOM PERETZ,

          Defendants.

**ORDER FOR FINAL JUDGMENT BY DEFAULT, OF PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES AND OTHER ANCILLARY AND EQUITABLE RELIEF AGAINST DEFENDANTS YUKOM COMMUNICATIONS LTD., LINKOPIA MAURITIUS LTD., WIRESTECH LIMITED, WSB INVESTMENT LIMITED, ZOLAREX LTD., YOSSI HERZOG, LEE ELBAZ, AND SHALOM PERETZ**

On August 12, 2019, Plaintiff United States Commodity Futures Trading Commission ("CFTC" or "Commission"), filed a Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief ("Complaint" or "Compl.", ECF No. 1), charging the five Yukom Entities, Defendants Yukom Communications Ltd ("Yukom Communications"), Linkopia Mauritius Ltd. ("Linkopia"), Wirestech Limited ("Wirestech"), WSB Investment Limited ("WSB"), and Zolarex Ltd. ("Zolarex") (collectively, the "Yukom Entities"); and four individual defendants Yossi Herzog ("Herzog"), Lee Elbaz ("Elbaz"), Yakov Cohen ("Cohen") and Shalom Peretz ("Peretz"), with operating the "Yukom Enterprise" and fraudulently soliciting individuals throughout the United States and other countries to enter into illegal, off-exchange transactions in binary options through fictitious entities using the trade names "BigOption," "BinaryBook," and

"BinaryOnline" in violation of Sections 2(e), 4c(b), 4d(a)(1), and 6(c)(1) of the Commodity Exchange Act, 7 U.S.C. §§ 2(e), 6c(b), 6d(a)(1), 9(1) (the Act") , and Commission Regulations 32.2, 32.4, 180.1(a)(1)-(3), 17 C.F.R. §§ 32.2, 32.4, 180.1(a)(1)-(3) (2024).

All Defendants were served with summons and a copy of the Complaint. *See* ECF No. 39.1. Only one defendant, Cohen, appeared to defend the CFTC's action. On September 5, 2024, the Court entered a Consent Order for Permanent Injunction and Other Equitable Relief against Defendant Cohen ("Cohen Consent", ECF No. 97). The Court has entered default pursuant to Fed. R. Civ. P. 55(a) as to all eight of the remaining defendants, collectively referred to herein as the "Defaulted Defendants." ECF No. 46 (Linkopia, Wirestech, WSB Investments, Zolarex, and Elbaz); and ECF No. 56 (Herzog, Yukom Communications, and Peretz). Pursuant to Fed. R. Civ. P. 55(b), the CFTC has moved this Court to grant final judgment by default against the eight Defaulted Defendants.

The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its motion, the record in this case, and the Court being otherwise advised in the premises, it is hereby found that the Plaintiff's Motion for Order Of Default Judgment Against Defendants Yukom Communications Ltd., Linkopia Mauritius Ltd., Wirestech Limited, WSB Investment Limited, Zolarex Ltd., Yossi Herzog, Lee Elbaz, and Shalom Peretz is **GRANTED**. Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1 as set forth herein.

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Findings of Fact

### The Parties

1.  Plaintiff **Commodity Futures Trading Commission** is the independent federal regulatory agency charged with the administration and enforcement of the Commodity Exchange Act and Regulations promulgated thereunder.

2.  Defaulted Defendant **Yukom Communications Ltd**. was incorporated in Israel in or prior to 2013 and maintained an office in Casarea, Israel.

3.  Defaulted Defendant **Linkopia Mauritius Ltd**. was incorporated in Mauritius in or prior to 2014 and maintained an office in Ebene, Mauritius

4.   Defaulted Defendant **Wirestech Limited** was incorporated in the Republic of the Marshall Islands on or around August 24, 2015 and did business as BigOption.

5.  Defaulted Defendant **WSB Investments Ltd**. was incorporated in Anguilla on or around March 27, 2014, in the United Kingdom on or around May 30, 2014, in St. Vincent and the Grenadines on or around February 9, 2015, and did business as BinaryBook.

6.  Defendant **Zolarex Ltd**. was incorporated in the Republic of the Marshall Islands on or around September 10, 2015and did business as BinaryOnline.

7.  Defaulted Defendant **Yossi Herzog** is an Israeli citizen who resided in Zichron Israel and owned, operated, and controlled each entity comprising the Yukom Enterprise. Herzog has been charged with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and three counts of wire fraud in violation of 18 U.S.C. § 1343 in connection with the same acts and practices set forth in the Complaint.  First Superseding Indictment, *USA v. Cohen et al,*

Case No. 19-cr-00077 (D. Md., Sept. 25, 2019).  As of January 22, 2025, the public docket in that matter indicates that Herzog has yet to appear and answer those charges

8.      Defaulted Defendant **Lee Elbaz** is an Israeli citizen who, prior to September 2017 resided in Israel and was the Chief Executive Officer ("CEO") of Yukom.  On August 7, 2019, Elbaz was convicted of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and three counts of wire fraud in violation of 18 U.S.C. § 1343 in the matter of *United States v. Elbaz,* Case No. 18-cr-00157 (D. Md.).

9.      Defendant **Shalom Peretz** is an Israeli citizen who had an ownership interest in Wirestech, WSB and Zolarex and was the director, officer and beneficial owner of Zolarex and the director of Wirestech.

10.     None of the Defaulted Defendants have been registered with the Commission in any capacity.

**Defendants Operated the Yukom Entities as a Common Enterprise**

11.     From March 26, 2014, until August 12, 2019, Defendants solicited customers throughout the United States and elsewhere to trade illegal, off-exchange binary options with the Yukom Enterprise through the BigOption, BinaryBook, and BinaryOnline brands (the "Yukom Brands").

12.     There was no distinction between the ownership and operations of the Yukom Brands.  Each of the Yukom Brands were owned and controlled by Settled Defendant Cohen and Hrezog and others.  Funds received from customers of the Yukom Brands were commingled with Defendants' own funds, transferred through offshore bank accounts and held in the name of the Yukom Entities or other related entities, all under the control of the Yukom Enterprise.  The Yukom brands also shared office spaces; as well as compliance, human resources, and accounting

services; and many employees and agents of the Yukom Enterprise performed the same work for multiple Yukom Brands.

13.     Therefore, the Yukom Entities were a common enterprise.

**Defaulted Defendants Offered to and Entered Into Illegal Off-exchange Commodity Options and Retail Swaps.**

14.     Defaulted Defendants offered to enter into, entered into, confirmed the execution of, maintained positions in, and otherwise conducted activity relating to binary option transactions through the Yukom Brands' websites, and in telephone calls, emails, and other solicitations.

15.     The binary options transactions Defaulted Defendants entered into, which were also swaps, were not conducted on any registered exchange or exempt foreign exchange but rather on an Internet-based "trading engine" platform provider (the "Platform").

16.     Defaulted Defendants, through the Yukom Enterprise, entered into binary options transactions, and accepted funds in connection with those transactions, from customers in the United States, most if not all of whom were not "eligible contract participants" ("ECPs") as defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18).

17.     Defaulted Defendants were not ECPs.

**Defaulted Defendants Committed Commodity Option and Swaps Fraud**

18.     Defaulted Defendants made numerous fraudulent misrepresentations to customers via the Yukom Brand websites and through email and telephone solicitations.

19.     Defaulted Defendants misrepresented that binary option transactions were profitable, when in fact the substantial majority of their customers lost money, and the individual brokers misrepresented their names, financial expertise, and physical location.

20.     Defaulted Defendants misappropriated customer funds and made additional misrepresentations to customers in order to thwart customers' attempts to withdraw their funds, including failing to disclose material information about so-called "bonuses" and "risk-free trades."

21.     Defaulted Defendants also used manipulative and deceptive devices to perpetuate their binary options scheme, including manipulating the Platform's risk settings to limit or prevent customers from being "in the money" with winning trades.

**Yukom, Linkopia, Wirestech, WSB and Zolarex Acted as Unregistered Futures Commission Merchants (FCMs)**

22.     The Yukom Entities solicited and accepted orders for commodity options and swaps, and accepted money to margin, guarantee or secure trades or contracts resulting from commodity options and swaps transactions by accepting money from customers via credit card payments and wire transfers.  None of the Yukom Entities has ever been registered as an FCM.

**Herzog, Elbaz and Peretz were Control Persons of the Yukom Entities**

23.     Herzog co-founded Yukom, was a primary beneficial owner and served as director and had control over Linkopia's bank accounts, employees and website.

24.     Herzog co-founded other entities that formed the Yukom Enterprise, he had control over the bank accounts used to accept and hold customer funds and registered and controlled Yukom Enterprise websites used to solicit customers.

25.     Herzog signed and approved agreements on behalf of the Yukom Enterprise.

26.     Peretz had an ownership interest in Wirestech, WSB and Zolarex and served as a director of at least two of those entities, as well as other entities that received, held, or transferred funds on behalf of the Yukom Enterprise.

27.     Peretz entered into agreements with the Platform for trading through two of the Yukom Brand websites.

6

28.     Elbaz was Yukom's Chief Executive Office from at least March until December 2016 and was responsible for supervising the individual brokers who solicited customers to trade binary options.  Among other activities, Elbaz interviewed and hired brokers and other employees, and she trained them on high-pressure sales techniques, set monthly revenue targets, and organized monthly sales competitions.

### Peretz, Elbaz and Herzog Were Agents of Yukom, Linkopia, Wirestech, WSB and Zolarex

29.     Herzog, Elbaz and Peretz acted on behalf of Yukom, Linkopia, Wirestech, WSB and Zolarex and within the scope of their employment.

## B. Conclusions of Law

### Jurisdiction and Venue

30.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

31.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because the Defaulted Defendants transacted business in this jurisdiction and the acts and practices in violation of the Act and Regulations occurred, are occurring or are about to occur within this District, among other places.

**Defaulted Defendants Operated the Yukom Entities as a Common Enterprise**

32.    As described in paragraphs 11-13 above, the Defaulted Defendants operated as a common enterprise.  Because they operated as a common enterprise, each is liable for the unlawful acts and practices of other members of the enterprise.  *FTC v. WV Universal Mgmt.,* LLC, 877 F.3d 1234, 1240 (11th Cir. 2017) (recognizing that courts have justly imposed joint and several liability where a common enterprise exists); *see also FTC v. E.M.A. Nationwide, Inc.,* 767 F 3d 611, 637 (6th Cir 2014) (affirming finding a common enterprise and imposition of joint and several liability where each of the corporate and individual defendants made up a "messy maze of interrelated business entities"); *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2012) (found common enterprise where there was no dispute that corporate defendants were controlled by the same persons and shared the same business address and office space); *CFTC v. Wall Street Underground, Inc*., 281 F. Supp. 2d 1260, 1271 (D. Kan. 2003) (individual and others held to be part of a common enterprise where each of them operate as a "single economic entity").

**Defaulted Defendants Offered to and Entered into Illegal Off-exchange Commodity Options and Illegal Off-Exchange Retail Swaps**

33.    As described in paragraphs 14-17 above, Defaulted Defendants offered to and entered into off exchange binary options with other non ECPs, i.e. retail customers.

34.    Swaps, as defined in Section 1a(47)(A) of the Act, 7 U.S.C. § 1a(47)(A), include binary options.  Specifically, subject to certain exclusions listed in Section 1a(47)(B), Section 1a(47)(A) provides, in part, that the term "swap" means any agreement, contract, or transaction—(i) that is an option of any kind that is for the purchase or sale, or based on the value, of 1 or more interest or other rates, currencies, commodities, etc.; and (ii) that provides for any purchase, sale, payment, or delivery that is dependent on the occurrence, nonoccurrence, or the extent of the

8

occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence.

35.     Binary options are also a form of commodity option subject to the provisions in Regulation 32.2, 17 C.F.R. § 32.2 (2024), which make it unlawful to offer, enter into, confirm the execution of, maintain a position in or otherwise conduct activity related to any transaction that is a commodity option transaction unless such transaction is conducted in compliance with and subject to the provisions of the Act otherwise applicable to any swap.  Courts have consistently held that "binary options" qualify as swaps and commodity option transactions within the meaning of the Act and Regulations.  *See CFTC v. Vision Fin. Partners, LLC*, 190 F. Supp. 3d 1126, 1130 (S.D. Fla. 2016) (denying motion to dismiss; holding that binary options are commodity options within the meaning of Section 4c(b) of the Act); *CFTC v. Vault Options, Ltd.*, No. 1:16-CV-01881, 2016 WL 5339716, at *5-6 (N.D. Ill. July 20, 2016)  (entering default judgment; holding that operators of website offering off-exchange binary options contracts violated Sections 4c(b) and 2(e) of the Act, and Regulation 32.2).

36.     Defaulted Defendants offered to enter into, confirmed the execution of, maintained positions in and otherwise conducted activity relating to commodity options, other than on a registered exchange, in violation of 7 U.S.C. § 1a(47)(A) and 17 C.F.R. 32.2; and entered into swap transactions with retail customers in violation of 7 U.S.C. § 2(e).

**Defaulted Defendants Committed Commodity Option and Swaps Fraud**

37.     As described above in paragraphs 18-21, Defaulted Defendants made numerous fraudulent misrepresentations to customers and misappropriated customer funds.

38.     7 U.S.C. § 6c(b), together with 17 C.F.R. § 32.4, prohibit fraud in connection with commodity options. Fraud involving commodity options is established when a person or entity:

(A) makes a misrepresentation, misleading statement, or a deceptive omission; (B) acts with scienter; and (C) the misrepresentation or omission is material. *CFTC v. R. J. Fitzgerald & Co., Inc.*, 310 F. 3d 1321, 1328 (11th Cir. 2002); *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 446-47 (D.N.J. 2000). Fraud involving commodity options is also established when a person or entity misappropriates customer funds. *See CFTC v. Noble Wealth Data Info. Servs., Inc.,* 90 F. Supp. 2d 676, 687 (D. Md. 2000), *aff'd in part, vacated in part, sub nom. CFTC v. Baragosh*, 278 F. 3d 319 (4th Cir. 2002) (misappropriation of customer funds, by diverting them to pay for operating and personal expenses, salaries and other expenses, constituted willful and blatant fraudulent activity).

39.     7 U.S.C. § 9(1) provides in relevant part, that "[i]t shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap . . . any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . . ." 17 C.F.R. 180.1(a) similarly provides, in relevant part, that "[i]t shall be unlawful for any person, directly or indirectly, in connection with any swap. . . to intentionally or recklessly: (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; [or] (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . ."

40.     Defaulted Defendants committed fraud in connection with binary options trading activities (i.e., commodity options and swaps) by making material misrepresentations and omissions to customers, including those designed to thwart customers' attempts to withdraw their

funds and by misappropriating customer funds. Defaulted Defendants also misappropriated customer funds. By this conduct, Defaulted Defendants committed commodity option fraud in violation of 7 U.S.C. § 6c(b) and 17 C.F.R § 32.4 and swap fraud in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3). *See, e.g.. Vault Options*, 2016 WL 5339716, at \*6 (default judgment finding operator of website offering off-exchange binary options contracts violated 7 U.S.C. § 6c(b) and 17 C.F.R § 32.4); *see also, e.g., CFTC v. Gibraltar Monetary Corp.*, No. 04-80132-CIV, 2006 WL 1789018, at \*15 (S.D. Fla. May 30, 2006) (entering judgment for CFTC after bench trial; holding that defendants made misrepresentations and omissions regarding returns from commodity options, in violation of 7 U.S.C. § 6c(b)), *aff'd*, 575 F. 3d 1180 (11th Cir. 2009).

### Yukom, Linkopia, Wirestech, WSB and Zolarex Are Liable for Acting as Unregistered FCMs

41. As described in paragraph 22, the Yukom Entities solicited and accepted orders for commodity options and swaps, and accepted money to margin, guarantee or secure trades or contracts resulting from commodity options or swaps transactions without registering as FCMs.

42. Section 1a(28) of the Act, 7 U.S.C. § 1a(28), in part, defines an FCM as an individual, association, partnership, or trust that is engaged in soliciting or accepting orders for swaps or commodity options, and, in connection with soliciting or accepting such orders, accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades that result or may result therefrom

43. Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1), makes it unlawful to act as an FCM unless registered as such with the Commission.

44. Yukom, Linkopia, Wirestech, WSB and Zolarex violated Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) by operating as FCMs without registration.

**Herzog, Elbaz and Peretz are Liable as Control Persons for the Yukom Entities' Violations**

45.     As described in paragraphs 23-28 above, Herzog, Elbaz and Peretz were control persons of the Yukom Entities.

46.     Under Section 13(b) of the Act, 7 U.S.C. 13c(b), any person who, directly or indirectly, controls any person who has violated any provision of the Act, or any of the rules, regulations, or orders issued pursuant to the Act may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person if the Commission can establish that the controlling person "did not act in good faith or knowingly induced, directly or indirectly," the act or acts constituting the violation. *R.J. Fitzgerald & Co*., 310 F.3d at 1334.

47.     Control will be found where "the defendant exercised general control over the operation of the entity principally liable and possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, even if such power was not exercised*.*" *CFTC v. Int'l Fin. Servs*., 323 F. Supp. 2d 482, 504 (S.D.N.Y. 2004) (quoting *CFTC v. Baragosh*, 278 F. 3d 319, 330 (4th Cir. 2002)). A controlling person does not act in good faith when he or she fails to maintain a reasonably adequate system of internal supervision and control. *In re First Nat'l Trading Corp*., CFTC Nos. 90-28, 92-17, 1994 WL 378010, at *11 (July 20, 1994), *aff'd without opinion sub nom*., *Pick v. CFTC*, 99 F. 3d 1139 (6th Cir. 1996). Further, a controlling person will be found to have knowingly induced violative conduct where, as here, the CFTC can show that the controlling person had actual or constructive knowledge of the core activities that make up the violation at issue and allowed them to continue. *Id.*

48.     Defaulted Defendants Elbaz, Herzog and Peretz were controlling persons of the Yukom Enterprise and failed to act in good faith, or knowingly induced, directly or indirectly, the

acts of the Yukom Enterprise and are therefore liable for the acts and practices of the Yukom Enterprise pursuant to 7 U.S.C. 13c(b).

### Yukom, Linkopia, Wirestech, WSB and Zolarex are Liable for the Acts of Peretz, Elbaz and Herzog

49.     As described above in paragraph 29, Herzog, Elbaz and Peretz acted on behalf of Yukom, Linkopia, Wirestech, WSB and Zolarex and within the scope of their employment.

50.     Section 2(a)(1)(B) of the Act, 7 U.S.C. 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2 (2024), provide that the "act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person."  The provision "enacts a variant of the common law principle of respondeat superior," and imposes strict liability on a principal for its agent's acts (1) if the principal authorized or ratified the acts or (2) created an appearance that the acts were authorized. *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986); *see Bosco v. Serhant*, 836 F.2d 271, 280 (7th Cir. 1987). Whether an agency relationship exists depends on the totality of the circumstances. *Stoler v. CFTC,* 855 F.2d 1288, 1292 (7th Cir. 1988).(citations omitted).

51.     Because Herzog, Peretz and Elbaz acted on behalf of Yukom, Linkopia, Wirestech, WSB and Zolarex,  Yukom, Linkopia, Wirestech, WSB and Zolarex are liable for their violations under Section 2(a)(1)(B) of the Act, 7 U.S.C. 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2 (2024).

52.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defaulted Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations

## II.   PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

53.   Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 Defendants Yukom Communications Ltd, Linkopia Mauritius Ltd., Wirestech Limited, WSB Investment Limited, Zolarex Ltd., Yossi Herzog, Lee Elbaz, and Shalom Peret, are permanently restrained, enjoined and prohibited from directly or indirectly:

a.   Engaging in commodity options fraud by cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.4, 17 C.F.R. § 32.4 (2024);

b.   Engaging in fraud by deceptive device or contrivance by using or employing, or attempting to use or employ, manipulative devices, schemes, and artifices to defraud; making or attempting to make, untrue or misleading statements of material facts; omitting to state material facts necessary in order to make statements made not untrue or misleading; and engaging or attempting to engage, in acts, practices, and courses of business, including, but not limited to, those specifically alleged that operated or would operate as a fraud or deceit upon customers or prospective customers, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1, 17 C.F.R. § 180.1(a)–(3) (2024);

c.   Engaging in illegal off-exchange commodity options transactions by offering to enter into, entering into, confirming the execution of, maintaining a position in, or otherwise conducting activity related to commodity options, other than on a

registered exchange, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R.§ 32.2 (2024).

d.     Entering into swaps transactions off exchange as non-eligible contract participants with customers who are not eligible contract participants in violation of Section 2(e) of the Act, 7 U.S.C. §2(e); and

e.     Accepting money to margin, guarantee, or secure trades or contracts resulting from commodity options or swaps transactions using instrumentalities of interstate commerce without being registered as a futures commission merchant, in violation of Section 4d(a)(1) of the Act, 7 U.S.C. §6d(a)(1).

54.    Defendants Yukom Communications Ltd Linkopia Mauritius Ltd. Wirestech Limited, WSB Investment Limited,Zolarex Ltd., Yossi Herzog, Lee Elbaz, and Shalom Peretz are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40)

b.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2024)), for their own personal account or for any account in which they have a direct or indirect interest;

c.     Having any commodity interests traded on their behalf;

d.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e.     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

15

f.    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2024); and/or

g.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2024)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9)(2024).

## III. RESTITUTION AND CIVIL MONETARY PENALTY

### A.    Restitution

55.    Defendants Yukom Communications Ltd Linkopia Mauritius Ltd. Wirestech Limited, WSB Investment Limited, Zolarex Ltd., Yossi Herzog, Lee Elbaz, and Shalom Peretz shall pay, jointly and severally, restitution in the amount of $112,918,458 ("Restitution Obligation"). This amount will be offset by any amounts paid in restitution in any criminal matters arising from the conduct alleged in the Complaint. If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

56.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defaulted Defendants 'customers, the Court appoints National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments from Defaulted Defendants and make distributions as set forth below. Because the Monitor is

acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

57.     Defaulted Defendants shall make Restitution Obligation payments, and any post-judgment interest payments, under this Order to the Monitor in the name "Yukom Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 320 South Canal Street, 24th Floor, Chicago, IL 60606 under cover letter that identifies the paying Defaulted Defendant and the name and docket number of this proceeding. Defaulted Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

58.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defaulted Defendants' customers identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part III. B. below.

59.     Defaulted Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defaulted Defendants 'customers to whom the Monitor, in its sole discretion, may determine to include in any plan for

distribution of any Restitution Obligation payments. Defaulted Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

60. The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Defaulted Defendants' customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

61. The amounts payable to each customer shall not limit the ability of any customer from proving that a greater amount is owed from Defaulted Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

62. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defaulted Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Defaulted Defendants to ensure continued compliance with any provision of this Order and to hold Defaulted Defendants in contempt for any violations of any provision of this Order.

63. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defaulted Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

18

**B.      Civil Monetary Penalty**

64.      Defendants Yukom Communications Ltd, Linkopia Mauritius Ltd., Wirestech Limited, WSB Investment Limited, Zolarex Ltd., Yossi Herzog, Lee Elbaz and Shalom Peretz shall pay, jointly and severally, a civil monetary penalty in the amount of $338 755,374 ("CMP Obligation").  If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

65.      Defaulted Defendants  shall pay their CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defaulted Defendants shall contact the Federal Aviation Administration at the email address above to receive payment instructions and shall fully comply with those instructions.  Defaulted Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defaulted Defendants and the name and docket number of this proceeding.  Defaulted Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

### C. Provisions Related to Monetary Sanctions

66. Partial Satisfaction:  Acceptance by the Commission or the Monitor of any partial payment of Defaulted Defendants' Restitution Obligation, or CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

### D. Miscellaneous Provisions

67. Notice:  All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

    Robert T. Howell
    Deputy Director, Division of Enforcement
    Commodity Futures Trading Commission
    Metcalfe Federal Building
    77 W. Jackson Blvd, Suite 800
    Chicago, IL.  60604

Notice to Defaulted Defendants:

| | |
|---|---|
| Yukom Communications Ltd. | Shalom Peretz |
| 19 Tarshish Street, | Rambam Street 11 |
| Ceasarea, Israel 3088900 | Bat Yam Israel, 5930516 |
| | |
| WSB Investment Ltd. | Lee Elbaz, Reg. No. 81371-053 |
| Financial Services Center | FCI Hazelton |
| Stoney Ground | Federal Correctional Institution |
| Kingstown, St. Vincent & the Grenadines | P.O. Box 5000 |
| VC0130 | Bruceton Mills, WV 26525 |
| | |
| Linkopia Mauritius Ltd. | Yossi Herzog |
| 3rd Floor, Cyber Tower 2 | Holga 7 Zichron |
| Ebene, Plaines Wilhems | Yaacov Israel 30900 |
| Mauritius 72201 | |

> Zolarex Ltd.
> c/o the Trust Company of the Marshall
> Islands
> Trust Company Complex,
> Ajeltake Road
> Ajeltake Island, Majuro
> Republic of the Marshall Islands MH 96960

Notice to NFA:

> Dale Spolojaric
> National Futures Association
> 320 South Canal St.
> 24th Floor
> Chicago, IL 60606-3447

All such notices to the Commission or the NFA shall reference the name and docket number of this action.

68.   Change of Address/Phone:  Until such time as Defaulted Defendants satisfy in full their Restitution Obligation, and CMP Obligation as set forth in this Order, Defaulted Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

69.   Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

70.   Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defaulted Defendants to modify or for relief from the terms of this Order.

71.   Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defaulted Defendants, upon any person under the authority or control of any of the Defaulted Defendants, and upon any person who receives actual

notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defaulted Defendants.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief Against Defendants,* forthwith and without further notice.

**IT IS SO ORDERED** on this 29th day of January, 2025.

_____
**Jeremy C Daniel**
**UNITED STATES DISTRICT JUDGE**

: